SILLS CUMMIS & GROSS, P.C.
Jack M. Zackin (JZ 2540)
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
Attorneys for the Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>BURNS AND ROE ENTERPRISES, INC.,<br>et al.,<br><br>           Debtors. | Chapter 11<br><br>Case Nos.  00-41610 and 05-47946<br><br>Jointly Administered<br><br>Hon. Rosemary Gambardella |

**FOURTH AMENDED PLAN OF REORGANIZATION OF**
**BURNS AND ROE ENTERPRISES, INC. AND**
**BURNS AND ROE CONSTRUCTION GROUP, INC.**

# TABLE OF CONTENTS

**Page**

ARTICLE I    DEFINITIONS ..................................................................................... 1

   1.1    Defined Terms ............................................................................................ 1

      (1)    "Addendum" ......................................................................... 1

      (2)    "Administrative Expense Claim" ......................................... 1

      (3)    "Affirming Order" ............................................................... 1

      (4)    "Allowed" ............................................................................ 1

      (5)    "Allowed Amount" ............................................................... 2

      (6)    "Applicable Date" ................................................................ 2

      (7)    "Asbestos Personal Injury Claim" ...................................... 3

      (8)    "Asbestos Personal Injury Claimant" .................................. 3

      (9)    "Asbestos Personal Injury Trust" ........................................ 3

      (10)    "Asbestos Personal Injury Trust Agreement" ..................... 3

      (11)    "Asbestos Personal Injury Trust Documents" ..................... 4

      (12)    "Bankruptcy Code" .............................................................. 4

      (13)    "Bankruptcy Court" ............................................................. 4

      (14)    "Bankruptcy Rules" ............................................................. 4

      (15)    "Burns and Roe Parties" ...................................................... 4

      (16)    "Business Day" ..................................................................... 5

      (17)    "Cases" or "Bankruptcy Cases" ........................................... 5

      (18)    "Cash" ................................................................................... 5

      (19)    "Century Settlement Agreement" ......................................... 5

      (20)    "Claim" ................................................................................. 5

      (21)    "Class 5 Special Ballot" ....................................................... 5

      (22)    "CNA" ................................................................................... 5

      (23)    "Committee" ......................................................................... 6

      (24)    "Confirmation Date" ............................................................ 6

      (25)    "Confirmation Order" .......................................................... 6

      (26)    "Cooperation Expenses" ...................................................... 6

      (27)    "Cure Claim" ........................................................................ 7

      (28)    "Debtors" .............................................................................. 7

# TABLE OF CONTENTS
(continued)

Page

(29) "Demand" ........................................................................................ 7

(30) "Disclosure Statement" .................................................................. 7

(31) "Disputed" ...................................................................................... 7

(32) "District Court" ............................................................................... 7

(33) "Effective Date" .............................................................................. 7

(34) "Entity" ........................................................................................... 7

(35) "Equity Interest" ............................................................................. 8

(36) "Estimated Amount" ....................................................................... 8

(37) "Exculpated Party" ......................................................................... 8

(38) "Fee Claim" ..................................................................................... 8

(39) "Final Order" or "Final Judgment" ................................................. 8

(40) "Future Claimant" ........................................................................... 9

(41) "General Unsecured Claim" ............................................................ 9

(42) "Hartford Settlement Agreement" ................................................... 9

(43) "Indirect Asbestos Personal Injury Claim" .................................... 9

(44) "Insurance Entity" ........................................................................... 9

(45) "Insurance Rights" ........................................................................ 10

(46) "Insurance Rights Transfer" .......................................................... 10

(47) "Insurance Rights Transfer Agreement" ....................................... 11

(48) "Legal Representative" .................................................................. 11

(49) "Litigation Claim" ......................................................................... 11

(50) "Permanent Channeling Injunction" ............................................. 11

(51) "Petition Date" .............................................................................. 12

(52) "Plan" ............................................................................................ 13

(53) "Potential CNA Trust Claims" ...................................................... 13

(54) "Priority Claim" ............................................................................ 13

(55) "Promissory Note" ........................................................................ 13

(56) "Protected Parties" ........................................................................ 13

(57) "Reorganized Debtors" ................................................................. 15

(58) "Schedules" ................................................................................... 15

# TABLE OF CONTENTS
(continued)

**Page**

| | | | |
|---|---|---|---|
| | (59) | "Secured Claim" | 15 |
| | (60) | "Settlement and Pledge Agreement" | 15 |
| | (61) | "Settling Insurance Entity" | 16 |
| | (62) | "Subject Insurance Policies" | 16 |
| | (63) | "Subject Insurance Settlement Agreements" | 17 |
| | (64) | "TAC" | 18 |
| | (65) | "Tax Claim" | 18 |
| | (66) | "Travelers Settlement Agreement" | 18 |
| | (67) | "Trust Claim" | 18 |
| | (68) | "Trust Claimant" | 18 |
| | (69) | "Trust Contribution" | 18 |
| | (70) | "Trust Distribution Procedures" or "TDP" | 18 |
| | (71) | "Trustee(s)" | 18 |
| | (72) | "Workers Compensation Claim" | 19 |
| | (73) | "Workers' Compensation Insurance" | 19 |
| 1.2 | | Other Terms | 19 |
| ARTICLE II | | PROVISION FOR TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS | 19 |
| 2.1 | | Administrative Expense Claims | 19 |
| ARTICLE III | | PROVISION FOR TREATMENT OF DEMANDS | 20 |
| 3.1 | | Demands | 20 |
| ARTICLE IV | | CLASSIFICATION OF CLAIMS AND INTERESTS | 20 |
| 4.1 | | Classification | 21 |
| ARTICLE V | | IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS NOT IMPAIRED AND IMPAIRED BY THIS PLAN | 21 |
| 5.1 | | Classes of Claims and Interests Not Impaired by this Plan | 21 |
| 5.2 | | Classes of Claims and Interests Impaired by this Plan and Entitled to Vote | 22 |
| ARTICLE VI | | PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS | 22 |
| 6.1 | | Priority Claims | 22 |
| 6.2 | | Tax Claims | 22 |
| 6.3 | | Secured Claims | 23 |

# TABLE OF CONTENTS
(continued)

Page

6.4     General Unsecured Claims ............................................................................... 23

6.5     Litigation Claims ............................................................................................ 23

6.6     Asbestos Personal Injury Claims and Indirect Asbestos Personal Injury
Claims ........................................................................................................... 24

6.7     Workers Compensation Claims ...................................................................... 24

6.8     Equity Interests .............................................................................................. 25

ARTICLE VII     MEANS FOR EXECUTION OF THE PLAN ................................................ 25

7.1     Creation of the Asbestos Personal Injury Trust ............................................. 25

7.2     Execution of Insurance Rights Transfer Agreement ....................................... 25

7.3     Assumption of Liabilities By the Asbestos Personal Injury Trust .................. 25

7.4     Imposition of Permanent Channeling Injunction ........................................... 26

7.5     Appointment of Trustees ................................................................................ 26

7.6     Preservation of Rights and Defenses ............................................................. 26

7.7     Trust Distribution Procedures and Addendum ............................................... 27

7.8     Pledge of Voting Securities ........................................................................... 27

7.9     Reduction of Insurance Judgments ................................................................ 27

7.10    Claims Attaching to Settlement Proceeds ...................................................... 28

7.11    Pursuit of Insurance Proceeds ....................................................................... 28

7.12    Orders in Aid of this Plan .............................................................................. 29

7.13    Effect of Receiving Payment from the Asbestos Personal Injury Trust .......... 29

7.14    Indemnification by the Asbestos Personal Injury Trust .................................. 30

7.15    BBRRCo ........................................................................................................ 31

ARTICLE VIII    CONDITIONS PRECEDENT ....................................................................... 31

8.1     Conditions to Confirmation ........................................................................... 31

8.2     Conditions to Effectiveness of Plan ............................................................... 34

8.3     Waiver of Conditions ..................................................................................... 34

ARTICLE IX     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ......................................................................................................... 34

9.1     Assumption/Rejection .................................................................................... 34

9.2     Claims Based on Assumption or Rejection of Executory Contracts or
Unexpired Leases ........................................................................................... 35

**TABLE OF CONTENTS**
(continued)

**Page**

| | | |
|---|---|---|
| ARTICLE X | IMPLEMENTATION OF THIS PLAN | 35 |
| 10.1 | Vesting of Property | 35 |
| 10.2 | Certificate of Incorporation and By-laws | 36 |
| 10.3 | Corporate Authority | 36 |
| 10.4 | Term of Existing Injunctions or Stays | 37 |
| ARTICLE XI | EFFECTS OF PLAN CONFIRMATION | 37 |
| 11.1 | Discharge and Injunction | 37 |
| 11.2 | Permanent Channeling Injunction | 38 |
| 11.3 | Exculpation | 38 |
| 11.4 | Insurance Neutrality | 38 |
| ARTICLE XII | MISCELLANEOUS PROVISIONS | 39 |
| 12.1 | Retention of Jurisdiction | 39 |
| 12.2 | Retention of Non-Exclusive Jurisdiction | 41 |
| 12.3 | Withdrawal of this Plan | 41 |
| 12.4 | Modification of this Plan | 41 |
| 12.5 | Tax Provision | 42 |
| 12.6 | Payment of Fees of United States Trustee | 42 |
| 12.7 | Disputed Claims Other than Trust Claims | 42 |
| 12.8 | Estimation of Claims Other Than Trust Claims | 43 |
| 12.9 | Treatment and Payment of Trust Claims | 44 |
| 12.10 | Notices | 44 |
| 12.11 | Post-Effective Date Roles of the Committee and the Legal Representative | 45 |
| 12.12 | Retiree Benefits | 46 |
| 12.13 | Debtors' Cooperation with Asbestos Personal Injury Trust | 46 |
| 12.14 | Headings | 46 |

Burns and Roe Enterprises, Inc., ("BREI") and Burns and Roe Construction Group, Inc.

("BRCGI") Debtors and Debtors in Possession in the above-captioned jointly administered cases

(together the "Debtors"), propose the following Plan of Reorganization pursuant to Section 1121

(a) of title 11 of the United States Code.

## ARTICLE I

## DEFINITIONS

1.1    Defined Terms.  As used herein, the following terms have the respective

meanings specified below.

(1)    "Addendum" means the Agreement and Addendum to the Plan of

Reorganization of Burns and Roe Enterprises, Inc. and Burns and Roe Construction Group, Inc.,

attached hereto as Exhibit I.

(2)    "Administrative Expense Claim" means: (i) any cost or expense of

administration of the Cases allowed under Section 503(b) of the Bankruptcy Code, including,

without limitation, any actual and necessary expense of preserving the Debtors' estates, Cure

Claims, Fee Claims; and (ii) any fees or charges assessed against the Debtors' estates under

Section 1930 of title 28 of the United States Code.

(3)    "Affirming Order" means an order or orders of the District Court issuing

or affirming the Confirmation Order.

(4)    "Allowed" means (a) with respect to any Claim other than an

Administrative Expense Claim, an Asbestos Personal Injury Claim, Indirect Asbestos Personal

Injury Claim or Workers Compensation Claim, that proof of the Claim was filed on or before the

date(s) designated by the Bankruptcy Court as the last day for filing proofs of claim against the

Debtors, or that the Claim has been or hereafter is scheduled by the Debtors as liquidated in

amount and not disputed or contingent and, in either case, no objection to the allowance thereof

has been interposed within any applicable period of limitation fixed by the Plan, the Bankruptcy

Code, the Bankruptcy Rules or an order of the Bankruptcy Court, or if an objection has been

interposed, such Claim has been allowed in whole or in part by a Final Order of the Bankruptcy

Court; and (b) with respect to any Claim that is asserted to constitute an Administrative Expense

Claim (i) a Fee Claim to the extent it is allowed by a Final Order of the Bankruptcy Court under

Section 330 of the Bankruptcy Code; or (ii) any Claim other than a Fee Claim that represents an

actual or necessary expense of preserving the estate or operating the business of the Debtors, any

such Claim to the extent that the Debtors or the Reorganized Debtors determine it to constitute

an Administrative Expense Claim, or (iii) with respect to any Claim that the Reorganized

Debtors do not believe constitutes an Administrative Expense Claim, any such Claim to the

extent it is allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the

extent that such allowed portion is deemed, pursuant to a Final Order of the Bankruptcy Court, to

constitute a cost or expense of administration under Sections 503 or 1114 of the Bankruptcy

Code.

(5)    "Allowed Amount" means, with respect to Claims other than Trust

Claims, the lesser of (a) the dollar amount of an Allowed Claim; or (b) the Estimated Amount of

such Claim.  Unless otherwise specified herein or by Final Order of the Bankruptcy Court, the

Allowed Amount of an Allowed Claim shall not include interest accruing on such Allowed

Claim from and after the Petition Date.

(6)    "Applicable Date" means the day that the Asbestos Personal Injury Trust

has received either (1) sixty-two million-five-hundred-thousand-dollars ($62,500,000.00), in

cash, from any source, or (2) the Hartford Settlement Payment, less (a) the Debtor Payment, as

defined in the Hartford Settlement Agreement, and (b) any reasonable expenses incurred by the Hartford Settlement Trust, as defined in the Hartford Settlement Agreement.

(7)    "Asbestos Personal Injury Claim" means a Claim against the Debtors, whether in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty for, attributable to or arising by reason of, directly or indirectly, physical, emotional or other personal injuries or other damages to or death of natural person(s) caused, or allegedly caused, in whole or in part (alone or in combination with any other dust, mineral, fiber, substance or material) directly or indirectly, by the presence of, or exposure to, asbestos or asbestos-containing materials manufactured, sold, supplied, produced, distributed, specified, installed, handled or in any other way used and arising or allegedly arising, directly or indirectly, from acts or omissions of the Debtors (or of another person, firm, corporation or other Entity for or with which the Debtors are or may be liable), including all claims, debts, obligations or liabilities for compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general or special damages) and punitive damages, excluding Workers Compensation Claims.

(8)    "Asbestos Personal Injury Claimant" means any Entity holding an Asbestos Personal Injury Claim or Indirect Asbestos Personal Injury Claim.

(9)    "Asbestos Personal Injury Trust" means the Burns and Roe Asbestos Personal Injury Trust established pursuant to the Asbestos Personal Injury Trust Agreement in accordance with the terms of Section 7.1 hereof.

(10)    "Asbestos Personal Injury Trust Agreement" means the agreement between the Debtors, the Committee, the Legal Representative, and the Asbestos Personal Injury

Trust establishing the Asbestos Personal Injury Trust, and all exhibits thereto, substantially in the form attached hereto as Exhibit C as amended from time to time according to its terms.

(11)   "Asbestos Personal Injury Trust Documents" means the documents establishing and governing the terms and conditions for the operation and administration of the Asbestos Personal Injury Trust including (i) the Asbestos Personal Injury Trust Agreement; (ii) the Trust Distribution Procedures, and (iii) the Insurance Rights Transfer Agreement.

(12)   "Bankruptcy Code" means title 11 of the United States Code, as it exists on the Confirmation Date.

(13)   "Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey, having jurisdiction over these Cases and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the District Court.

(14)   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, together with the local rules adopted by the Bankruptcy Court, as amended from time to time.

(15)   "Burns and Roe Parties" or individually a "Burns and Roe Party" means (i) Burns and Roe Enterprises, Inc., Winona Hudson Corporation; Burns and Roe Group, Inc.; Burns and Roe Construction Group, Inc., Burns and Roe Services Corp. ("BRSC"), and (ii) each other Person over which, as of the Execution Date, the Parties listed in (i) above have the legal right, by way of contract, express corporate authority, or direct or indirect majority ownership, to act on behalf of or to bind and which are insureds under a Subject Insurance Policy, including each of the respective directors, members, officers, shareholders, agents and employees of the

4

Persons listed in (i) above, solely in their capacities as such, and those Entities listed on Exhibit A hereto.

(16)    "Business Day" means any day other than a Saturday, Sunday or "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

(17)    "Cases" or "Bankruptcy Cases" means the jointly administered bankruptcy cases for the Debtors in the Bankruptcy Court, bearing the captions and case numbers *In re Burns and Roe Enterprises*, Inc., No. 00-41610(RG), and *In re Burns and Roe Construction Group, Inc.*, No. 05-47946(RG).

(18)    "Cash" means cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any Entity, including interest accrued or earned thereon.

(19)    "Century Settlement Agreement" means the Settlement and Buyback Agreement" between the Burns and Roe Parties and the Century Parties (as therein defined) approved by the Order entered by the Bankruptcy Court on April 23, 2008.

(20)    "Claim" means a claim, as that term is defined in Section 101(5) of the Bankruptcy Code, against the Debtors.

(21)    "Class 5 Special Ballot" means the form of ballot distributed, together with the Disclosure Statement, to holders of Class 5 Claims (Asbestos Personal Injury Claims and Indirect Asbestos Personal Injury Claims) for the purpose of indicating acceptance or rejection of this Plan.

(22)    "CNA" means Continental Casualty Company, American Casualty Company of Reading, Pa., and Commercial Insurance Company of Newark, N.J., and any past or

present predecessor, successor, assign, Affiliate or subsidiary of any or all of them, solely in their

capacities as such.  For the purposes of this definition only:

> (i)     "Affiliate" means (a) any Entity directly or indirectly
> Controlling, Controlled by, or under common Control with such
> other Entity, and (b) any officer, director, member, manager or
> partner of such other Entity, solely in their capacities as such; and

> (ii)    "Control" (including "Controlling" and "Controlled")
> means the direct or indirect possession of the power to direct or
> cause the direction of the management and policies of the specified
> entity, through the ownership of equity interests therein, by
> contract or otherwise.

(23)    "Committee" means the Official Committee of Unsecured Creditors

appointed in the Cases.

(24)    "Confirmation Date" means the first date upon which the Confirmation

Order and the Affirming Order shall be first entered on the dockets maintained by the Clerk of

the Bankruptcy Court and the Clerk of the District Court and on which all of the conditions

under Section 8.1 of this Plan have been satisfied or waived.

(25)    "Confirmation Order" means an order or order(s) of the Bankruptcy Court

confirming the Plan and issuing the Permanent Channeling Injunction.

(26)    "Cooperation Expenses" means all reasonable out-of-pocket expenses and

costs paid by the Burns and Roe Parties after the Effective Date to comply with their duty to

cooperate with the Asbestos Personal Injury Trust under the Plan and the Insurance Rights

Transfer Agreement, including, but not limited to, the fees and expenses of outside counsel and

other professionals, as well as expenses for copying, travel, lodging, meals, postage, messengers

and delivery services.

(27)   "Cure Claim" means a Claim by a party to an executory contract or

unexpired lease of the Debtors for the costs of curing any defaults under any such contract or

lease that is to be assumed by the Debtors pursuant to Section 365(b) of the Bankruptcy Code.

(28)   "Debtors" means Burns and Roe Enterprises, Inc., a New Jersey

corporation, and Burns and Roe Construction Group, Inc., a Delaware corporation.

(29)   "Demand" means a demand for payment, present or future, that (i) was not

a Claim during the Cases, (ii) arises out of the same or similar conduct or events that give rise to

Asbestos Personal Injury Claims or Indirect Asbestos Personal Injury Claims, and (iii) pursuant

to the Plan is to be paid by the Asbestos Personal Injury Trust.

(30)   "Disclosure Statement" means the Disclosure Statement describing the

Plan prepared in accordance with Section 1125 of the Bankruptcy Code as approved by order of

the Bankruptcy Court, as the same may be amended or modified from time to time.

(31)   "Disputed" means, with respect to any Claim or Equity Interest, other than

an Asbestos Personal Injury Claim, an Indirect Asbestos Personal Injury Claim or a Workers

Compensation Claim, any Claim or Interest that is not an Allowed Claim or Allowed Equity

Interest.

(32)   "District Court" means the United States District Court for the District of

New Jersey.

(33)   "Effective Date" means the date that is the first Business Day on which all

conditions to the effectiveness of this Plan under Section 8.2 of the Plan have been satisfied or

waived.

(34)   "Entity" means a "person" (as defined in Section 101(41) of the

Bankruptcy Code), individual, corporation, partnership, joint venture, association, joint stock

company, limited liability company, estate, entity, trust, trustee, unincorporated organization,
government, governmental unit (as defined in Section 101(27) of the Bankruptcy Code), agency
or political subdivision thereof, the United States Trustee or any other entity.

(35)    "Equity Interest" means any equity interest in the Debtors.

(36)    "Estimated Amount" means the dollar amount of an unliquidated Claim,
Disputed Claim or contingent Claim as estimated pursuant to Section 502(c) of the Bankruptcy
Code.

(37)    "Exculpated Party" means each of the Debtors, the Reorganized Debtors,
or any of their respective successors or assigns, and each of their present and former directors
and officers, shareholders, the Committee, its members and representatives, the Legal
Representative, and his representatives, and each of the professionals retained by any Order of
the Bankruptcy Court by each of the Debtors, the Committee, and the Legal Representative,
solely in their capacities as such.

(38)    "Fee Claim" means any Administrative Claim resulting from the rendering
of professional services and related disbursements under Sections 503(a) of the Bankruptcy Code
by a professional employed under Section 327, 328 or 1103 of the Bankruptcy Code that is
required to apply to the Bankruptcy Court for allowance of compensation and reimbursement of
expenses pursuant to Section 330 of the Bankruptcy Code.

(39)    "Final Order" or "Final Judgment" means an order, ruling or judgment
that is: (i) no longer subject to review, reversal, modification or amendment by motion for
rehearing or reconsideration, appeal, or writ of certiorari, under applicable court rules or statutes;
and (ii) not subject to any stay or injunction against its effectiveness or enforcement.

8

(40)    "Future Claimant" means any Entity that holds or becomes the holder of a Demand.

(41)    "General Unsecured Claim" means any Claim that is not an Administrative Expense Claim, a Tax Claim, a Priority Claim, a Secured Claim, an Asbestos Personal Injury Claim, an Indirect Asbestos Personal Injury Claim, a Demand or a Workers Compensation Claim, but includes any portion of a Secured Claim that exceeds the value of the property securing such Claim.

(42)    "Hartford Settlement Agreement" means the Agreement between the Burns and Roe Parties and the Hartford Parties (as therein defined) approved by the Order Approving Settlement Agreement and Enjoining Certain Claims Against the Hartford Parties entered by the Bankruptcy Court on February 17, 2005.

(43)    "Indirect Asbestos Personal Injury Claim" means a Claim for contribution, reimbursement, indemnity or subrogation (as those terms may be defined pursuant to the law of the relevant jurisdiction) that is: (i) held by an Entity (a) who has been, is or may become a defendant or respondent in an action or proceeding seeking damages for Asbestos Personal Injury Claims, or (b) seeking reimbursement or payment of settlements or judgments paid by or on behalf of codefendants or litigation or defense costs, including without limitation legal fees, incurred in connection with litigation involving Asbestos Personal Injury Claims, and (ii) asserted against the Debtors for (a) reimbursement of all or any portion of any damages any such Entity has paid or may pay to the Entities asserting such Asbestos Personal Injury Claims or (b) reimbursement of related litigation or defense costs.

(44)    "Insurance Entity" means any Entity, including any insurance company, insurance broker, guaranty association or liquidator, that has issued, or that has actual or

9

potential liability, duties or obligations with respect to any Subject Insurance Policy or Subject Insurance Settlement Agreement.

(45)   "Insurance Rights" shall mean any and all rights, titles, privileges, interests, claims, demands or entitlements of the Debtors to any proceeds, payments, initial or supplemental dividends, initial or supplemental scheme payments, causes of action, and choses in action arising under or attributable to the Subject Insurance Policies or the Subject Insurance Settlement Agreements, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including:

(a)   any and all rights of any of the Debtors to pursue or receive payments under any Subject Insurance Policy or Subject Insurance Settlement Agreement, whether for liability, defense or otherwise;

(b)   any and all rights of any of the Debtors to pursue or receive payments under any Subject Insurance Policy or Subject Insurance Settlement Agreement from any domestic or foreign insolvent Insurance Entity or liquidator, whether in receivership, liquidation, rehabilitation, run-off, scheme of arrangement, or any other form of proceeding; and

(c)   any and all rights of any of the Debtors to pursue or receive payments under or with regard to any Subject Insurance Policy or Subject Insurance Settlement Agreement from any state insurance guaranty association or fund.

(46)   "Insurance Rights Transfer" means the transfer, assignment, and vesting of Insurance Rights described in the Plan and in the Asbestos Insurance Rights Transfer Agreement.

10

(47)    "Insurance Rights Transfer Agreement" means the Asbestos Insurance

Rights Transfer Agreement referenced in Section 7.2 of this Plan and in substantially the form

attached to the Plan as Exhibit B.

(48)    "Legal Representative" means Anthony R. Calascibetta, the official Legal

Representative of Future Asbestos Personal Injury Claimants appointed by the Orders of the

Bankruptcy Court dated March 19, 2002 and November 7, 2005, and any successor to him.

"Legal Representative" specifically includes (i) Mr. Calascibetta or any other person appointed

by order of the Bankruptcy Court pursuant to Section 524(g) of the Bankruptcy Code to serve

prior to the Effective Date; or (ii) any other person appointed after the Effective Date pursuant to

the Asbestos Personal Injury Trust Documents to serve as the post-consummation representative

of future claimants with respect to the Asbestos Personal Injury Trust and any successor to that

person.

(49)    "Litigation Claim" means any General Unsecured Claim scheduled or

timely filed in the Cases with respect to which a litigation or arbitration proceeding was pending

as of the Petition Date to determine the Debtors' liability (if any) or with respect to which a

request to arbitrate had been made prior to the Petition Date and which has not been paid, or

settled prior to the Confirmation Date, *provided however,* that "Litigation Claim" does not

include any pre-petition lawsuit, action, arbitration or other proceeding commenced or pending

against the Debtors prior to the Effective Date to recover for or on account of any Trust Claim.

(50)    "Permanent Channeling Injunction" means an order or orders of the

Bankruptcy Court and/or the District Court (which may be the Confirmation Order and/or the

Affirming Order), issued pursuant to Section 524(g) of the Bankruptcy Code permanently and

forever staying, restraining, and enjoining an Entity from taking any action against any Protected

11

Party or Settling Insurance Entity on, with respect to, or arising out of any Trust Claim, for the

purpose of directly or indirectly, collecting, recovering, or receiving payment, including:

(a)    commencing, conducting, or continuing in any manner, directly or

indirectly, any suit, action, or other proceeding (including any action in a judicial, arbitral,

administrative, or other forum) against or affecting any Protected Party or Settling Insurance

Entity, or any property or interests in property of any Protected Party or Settling Insurance

Entity;

(b)    enforcing, levying, attaching (including any prejudgment

attachment), collecting, or otherwise recovering by any means or in any manner, whether directly

or indirectly, any judgment, award, decree, or other order against any Protected Party or Settling

Insurance Entity, or any property or interests in property of any Protected Party;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly

or indirectly, any encumbrance against any Protected Party or Settling Insurance Entity, or any

property or interests in property of any Protected Party;

(d)    setting off, seeking reimbursement of, contribution from, or

subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount

against any liability owed to any Protected Party or Settling Insurance Entity, or any property or

interests in property of any Protected Party, except as provided in Section 7.9 of this Plan; and

(e)    proceeding in any manner in any place with regard to any matter

that is subject to resolution pursuant to the Asbestos Personal Injury Trust except in conformity

and compliance with the Trust Distribution Procedures.

(51)    "Petition Date" means December 4, 2000, with respect to Burns and Roe

Enterprises, Inc., and October 21, 2005, with respect to Burns and Roe Construction Group, Inc.

(52)    "Plan" means this Fourth Amended Plan of Reorganization as the same may be amended or modified from time to time, and all exhibits thereto, including the Asbestos Personal Injury Trust Documents.

(53)    "Potential CNA Trust Claims" means Trust Claims with respect to which the claimant and/or the Trust asserts that, pursuant to one or more of the CNA Policies, as defined in the Addendum, CNA has a duty to defend, to pay liability, or to provide indemnity for such Trust Claim.

(54)    "Priority Claim" means any Claim, other than any Administrative Expense Claim or any Tax Claim, which is entitled to priority in right of payment pursuant to Section 507(a) of the Bankruptcy Code.

(55)    "Promissory Note" means the promissory note issued pursuant to the Settlement and Pledge Agreement and payable jointly and severally by the Debtors to the Asbestos Personal Injury Trust, in the aggregate principal amount of $9,250,000, substantially in the form annexed as Exhibit D.

(56)    "Protected Parties" means any of the following parties:

(a)    the Debtors, the Reorganized Debtors, and any of their pre- and post-Confirmation Date officers, directors, stockholders, agents, employees, members, representatives, advisors, financial advisors, accountants and attorneys, in their capacities as such, except to the extent of the foregoing Entities' obligations and continuing obligations under this Plan.

(b)    any Entity, other than the Asbestos Personal Injury Trust and its successors, that, pursuant to the Plan or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any assets of the Debtors or the Reorganized Debtors (but only to

13

the extent that liability is asserted to exist by reason of becoming such a transferee or successor),

excluding any Settling Insurance Entity;

(c)    any Entity that, pursuant to the Plan or after the Effective Date,

makes a loan to the Reorganized Debtors, the Asbestos Personal Injury Trust or to a successor to,

or transferee of, any assets of the Debtors, the Reorganized Debtors or the Asbestos Personal

Injury Trust (but only to the extent that liability is asserted to exist by reason of such Entity

becoming such a lender or to the extent any pledge of assets made in connection with such a loan

is sought to be upset or impaired); or

(d)    any Entity, other than the Asbestos Personal Injury Trust, to the

extent he, she, or it is alleged to be directly or indirectly liable for the conduct of or for Claims or

Demands against the Debtors and/or the Reorganized Debtors solely by reason of one or more of

the following:

(i)    such Entity's past or present ownership of a financial interest in the

Debtors or the Reorganized Debtors or a past or present affiliate of the

Debtors or a predecessor in interest of the Debtors;

(ii)    such Entity's past or present involvement in the management of the

Debtors or the Reorganized Debtors or a predecessor in interest of the

Debtors;

(iii)    such Entity's past or present service as an officer, director, or

employee of the Debtors or the Reorganized Debtors or a related party, as

defined in 11 U.S.C. §524(g)(4)(A)(iii);

(iv)    such Entity's involvement in a transaction changing the corporate

structure, or in a loan or other financial transaction affecting the financial

14

condition, of the Debtors or the Reorganized Debtors or a related party, as defined in 11 U.S.C. §524(g)(4)(A)(iii), including, but not limited to:

> (x)      involvement in providing financing (debt or equity), or advice to an Entity involved in such transaction; or

> (y)      acquiring or selling a financial interest in an Entity as part of such transaction.

(57)    "Reorganized Debtors" means BREI and BRCGI, as they shall exist on and after the Effective Date.

(58)    "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtors in accordance with Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement may be amended or supplemented from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(59)    "Secured Claim" means any Claim, secured by a valid and unavoidable lien on or security interest in property of the Debtors pursuant to Section 506(a) of the Bankruptcy Code, but only to the extent of the value as of the Confirmation Date of such lien or security interest as determined by Final Order of the Bankruptcy Court or as agreed to by the Debtors and the holder of such Claim.

(60)    "Settlement and Pledge Agreement" means the agreement among the Debtors, Winona Hudson Corporation, Burns and Roe Group, Inc. and the Asbestos Personal Injury Trust substantially in the form annexed hereto as Exhibit E which sets forth the terms and conditions of the settlement among those parties, the payments required to be made and the collateral pledged to the Asbestos Personal Injury Trust in consideration of the Permanent

Channeling Injunction and the injunctions and other relief granted to the Protected Parties pursuant to the Plan.

(61)    "Settling Insurance Entity" means (a) those Insurance Entities listed on Exhibit J attached hereto, and (b) any other Insurance Entity that (i) has entered into a settlement agreement that is sufficiently comprehensive in the determination of the Committee, the Legal Representative and the Debtors to warrant treatment under Section 524(g) of the Bankruptcy Code, and (ii) is included on a schedule of Settling Insurance Entities filed by the Debtors, with the approval of the Committee and the Legal Representative, prior to the conclusion of the hearing held by the Bankruptcy Court on the confirmation of this Plan, and (c) CNA, but only if and to the extent that CNA satisfies the provisions of Section 1.1(a)(60)(iii) of the Addendum or the Trust so moves pursuant to Section 2.3 of the Addendum, and such motion is granted by Final Order of the District Court.

(62)    "Subject Insurance Policies" means all of the following insurance policies:

(a)     any insurance policy listed on Exhibit F attached hereto; and

(b)     any liability insurance policy (including any general liability policy, employers' liability policy, wrap-up policy, site-specific policy or project specific policy; whether such policy is primary, umbrella, excess, or otherwise, whether known or unknown, whether domestic or foreign, and regardless of the policy territory covered) that (i) was issued to a Burns and Roe Party or (ii) provides insurance coverage and/or other benefits to a Burns and Roe Party for a policy period that commences prior to May 1, 1987, and that provides insurance coverage and/or benefits in connection with any Trust Claim; and

(c)     any liability insurance policy (including any general liability policy, employers' liability policy, wrap-up policy, site-specific policy or project-specific policy:

16

whether such policy is primary, umbrella, excess, or otherwise, whether known or unknown, whether domestic or foreign, and regardless of the policy territory covered) (i) that was issued to a Burns and Roe Party or that provides insurance coverage and/or other benefits to a Burns and Roe Party for a policy period that commences on or after May 1, 1987, (ii) that provides insurance coverage and/or other benefits in connections with any Trust Claim, and (iii) that does not contain an exclusion or exclusionary language that applies to exclude all Trust Claims. Notwithstanding the foregoing, "Subject Insurance Policies" shall not include:

> (x)    any insurance policy that does not provide coverage to the Debtor or to an entity listed on Exhibit A hereto;
>
> (y)    any insurance policy issued on or after May 1, 2004, unless and until a Trust Claim is asserted that is covered under such insurance policy, in which case, such insurance policy shall be a Subject Insurance Policy only to the extent said Trust Claim is so covered; and
>
> (z)    Workers' Compensation Insurance.

(63)    "Subject Insurance Settlement Agreements" means the agreements listed on the schedule attached as Exhibit G hereto, as such Exhibit may be amended by the Debtors from time to time prior to the Effective Date with the consent of the Committee and the Legal Representative, and any other agreements between an Insurance Entity and the Debtors or the Asbestos Personal Injury Trust whereby an Insurance Entity has promised to make payments that cover or may cover all or part of one or more Trust Claims, including any agreement with an Insurance Entity relating to a Subject Insurance Policy and entered into by the Debtors  that is approved by the Bankruptcy Court.

17

(64)    "TAC" means the Trust Advisory Committee whose duties and responsibilities are set forth in the Asbestos Personal Injury Trust Documents.

(65)    "Tax Claim" means a Claim of a governmental unit of the kind specified in, and entitled to priority under, Section 507(a)(8) of the Bankruptcy Code.

(66)    "Travelers Settlement Agreement" means the Settlement Agreement and Release between the Burns and Roe Parties and the Travelers Parties (as therein defined) approved by Order entered by the Bankrutpcy Court on March 25, 2008.

(67)    "Trust Claim" means an Asbestos Personal Injury Claim, Indirect Asbestos Personal Injury Claim, or Demand.

(68)    "Trust Claimant" means a holder of a Trust Claim.

(69)    "Trust Contribution" means (i) cash in the sum of $250,000; (ii) the Promissory Note; (iii) the Settlement and Pledge Agreement; (iv) the collateral pledged by Winona Hudson Corporation pursuant to the Settlement and Pledge Agreement, consisting of fifty-one percent (51%) of the issued and outstanding voting stock of Burns and Roe Group, Inc., and (v) the Insurance Rights Transfer.

(70)    "Trust Distribution Procedures" or "TDP" means those claims resolution and distribution procedures, substantially in the form of Exhibit H to the Plan, to be implemented by the Asbestos Personal Injury Trust pursuant to the terms and conditions of this Plan and the Asbestos Personal Injury Trust Documents to administer Claims of and distributions to holders of Trust Claims.

(71)    "Trustee(s)" means the individual(s) selected to act as trustee(s) pursuant to the terms of the Asbestos Personal Injury Trust Documents to administer the Asbestos Personal Injury Trust, and any successors thereto.

18

(72)    "Workers Compensation Claim" means a Claim or Demand of a present or former employee of the Debtors, who is currently receiving, currently has the right to receive, or may in the future have a right to receive, benefits under a government-mandated workers' compensation system.  If such employee asserts an Asbestos Personal Injury Claim outside of such government workers' compensation system or in addition to a claim asserted in such government workers' compensation system, then such Claim shall be treated as an Asbestos Personal Injury Claim to the extent that applicable law permits such employee to pursue all or part of such Claim in that manner.

(73)    "Workers' Compensation Insurance" means any insurance policy or portion of any insurance policy to the extent that it provides insurance coverage or benefits for Workers' Compensation Claims.

1.2    Other Terms.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise.  "Including" means "including but not limited to."  Any term used in this Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. The plural includes the singular.  In addition, the rules of construction contained in Section 102 of the Bankruptcy Code apply to the construction of this Plan.

## ARTICLE II

## PROVISION FOR TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

2.1    Administrative Expense Claims.  Each holder of an Allowed Administrative Expense Claim shall be paid in full, in Cash, on or as soon as practicable after the Effective Date; *provided, however,* that Allowed Administrative Expense Claims representing obligations incurred by the Debtors in the ordinary course of business during the Cases (other than Fee

19

Claims) shall be paid in full by the Debtors when due in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, if any. Notwithstanding the foregoing, Fee Claims shall be paid by the Debtors on the date upon which the Bankruptcy Court enters an order allowing such Fee Claims following notice provided pursuant to Rule 2002 of the Bankruptcy Rules, or in accordance with such other terms as may be agreed to between the Debtors and any holder(s) of a Fee Claim.

### ARTICLE III

### PROVISION FOR TREATMENT OF DEMANDS

3.1     Demands. On the Effective Date, in consideration of the Trust Contribution to the Asbestos Personal Injury Trust, each holder of a Demand shall have its Demand permanently channeled to the Asbestos Personal Injury Trust pursuant to the Permanent Channeling Injunction and such Demand may thereafter be asserted exclusively against the Asbestos Personal Injury Trust in accordance with the provisions set forth in the Trust Distribution Procedures and, with respect to Potential CNA Trust Claims, the Addendum. Holders of Demands are, subject to the Trust Distribution Procedures and the Addendum, enjoined from filing any future litigation, claims or causes of action arising out of such Demands against Protected Parties and any Settling Insurance Entities and may not proceed in any manner against the Protected Parties or any Settling Insurance Entities in any state or federal court or administrative or arbitral forum, and are required to pursue their Demands against the Asbestos Personal Injury Trust solely as provided in the Trust Distribution Procedures and, with respect to Potential CNA Trust Claims, the Addendum.

### ARTICLE IV

### CLASSIFICATION OF CLAIMS AND INTERESTS

20