4.1     Classification.  Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtors.  A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies within the description of the class and is classified in a different class to the extent the Claim or Interest qualifies within the description of that different class. In accordance with Sections 1123(a)(1) and 524(g)(5) of the Bankruptcy Code, Administrative Expense Claims, Tax Claims and Demands are not classified.

Class 1.  Class 1 consists of all Allowed Priority Claims.

Class 1A.  Class 1A consists of all Allowed Tax Claims.

Class 2.  Class 2 consists of all Allowed Secured Claims, each of which will be within a separate subclass with each subclass to be deemed a separate Class for all purposes.

Class 3.  Class 3 consists of all Allowed General Unsecured Claims except Asbestos Personal Injury Claims, Indirect Asbestos Personal Injury Claims, Litigation Claims and Workers Compensation Claims.

Class 4.  Class 4 consists of all Litigation Claims.

Class 5.  Class 5 consists of all Asbestos Personal Injury Claims and Indirect Asbestos Personal Injury Claims.

Class 6.  Class 6 consists of all Workers Compensation Claims.

Class 7.  Class 7 consists of all Allowed Equity Interests in the Debtors.

**ARTICLE V**

**IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS NOT IMPAIRED
AND IMPAIRED BY THIS PLAN**

5.1     Classes of Claims and Interests Not Impaired by this Plan.  Priority Claims (Class 1), Tax Claims (Class 1A), Secured Claims (Class 2), General Unsecured Claims (Class 3),

Litigation Claims (Class 4), Workers Compensation Claims (Class 6) and Equity Interests (Class

7) are not impaired by this Plan.  Pursuant to Section 1126(f) of the Bankruptcy Code, the

holders of such Claims and Interests are conclusively presumed to have accepted this Plan, and

the votes of such holders shall not be solicited.

  5.2  Classes of Claims and Interests Impaired by this Plan and Entitled to Vote.

Asbestos Personal Injury Claims and Indirect Asbestos Personal Injury Claims (Class 5) are

impaired by this Plan, and the holders of such Claims are entitled to vote to accept or reject this

Plan.

## ARTICLE VI

## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

**Priority Claims**

  6.1  Priority Claims.  (Class 1).  Class 1 Claims are not impaired.  On the Effective

Date, each holder of an Allowed Priority Claim shall receive the full amount of its Allowed

Priority Claim, without interest, or such other treatment as may be agreed upon by the Debtors

and the holder of an Allowed Priority Claim (subject to the prior reasonable approval of the

Committee and the Legal Representative.)

  6.2  Tax Claims.  (Class 1A).  Class 1A Claims are not impaired. A holder of an

Allowed Tax Claim shall receive, at the Debtors' option (subject to the prior reasonable approval

of the Committee and the Legal Representative), either (a) the full amount of its Allowed Tax

Claim, without interest, on the Effective Date; (b) deferred Cash payments over a period not

exceeding six years after the date of assessment of such Claim, of a value, as of the Effective

Date, equal to the Allowed amount of such Claim; or (c) such other treatment as may be agreed

to by the Debtors and the holder of an Allowed Tax Claim (subject to the reasonable approval of

the Committee and the Legal Representative). The Debtors do not believe that any such Tax

Claims exist.

**Secured Claims**

6.3     Secured Claims. (Class 2). Class 2 Claims are not impaired. With respect to

each Allowed Secured Claim, at the Debtors' option, subject to the reasonable approval of the

Committee and the Legal Representative, (a) the legal, equitable and contractual rights of such

holder of an Allowed Secured Claim shall remain unaltered, and the holder of such Allowed

Secured Claim shall retain its respective lien or liens which will not be altered or impaired; (b)

the holder of such Allowed Secured Claim shall receive the full amount of its Allowed Secured

Claim in cash on the Effective Date; (c) the Debtors shall have released to the holder of such

Allowed Secured Claim the collateral securing such Claim; or (d) the Debtors shall provide such

other treatment that will render the Allowed Secured Claim unimpaired pursuant to Section 1124

of the Bankruptcy Code.

**Unsecured Claims**

6.4     General Unsecured Claims. (Class 3). Class 3 Claims are not impaired. The

legal, equitable, and contractual rights to which the holders of such Claims are entitled will be

left unaltered. The holders of Allowed Class 3 Claims shall be paid by the Debtors the full

Allowed amount of their claims, in Cash, on the Effective Date.

6.5     Litigation Claims. (Class 4). Class 4 Claims are not impaired. On the Effective

Date, the litigation or arbitration proceedings with respect to such Claims shall be commenced,

reinstated or recommenced and the Reorganized Debtors shall pay each holder of an Allowed

Class 4 Claim the full amount of its Claim as determined by the court(s) or arbitrator(s) having

competent jurisdiction over such proceedings upon entry of a Final Judgment or an arbitration

award that has been confirmed by Final Order or Final Judgment of a court of competent

23

jurisdiction and the legal, equitable and contractual rights of each holder of an Allowed Class 4

Claim will not be altered. This class does not include Asbestos Personal Injury Claims or Indirect

Asbestos Personal Injury Claims, which are classified as Class 5 Claims.

      6.6    Asbestos Personal Injury Claims and Indirect Asbestos Personal Injury Claims.

(Class 5). Class 5 Claims are impaired. On the Effective Date, Asbestos Personal Injury Claims

and Indirect Asbestos Personal Injury Claims shall be discharged as against the Debtors and the

Reorganized Debtors pursuant to the terms and conditions of this Plan and the Asbestos Personal

Injury Trust Documents. Pursuant to the Permanent Channeling Injunction, each holder of an

Asbestos Personal Injury Claim or an Indirect Asbestos Personal Injury Claim shall have its

Claim permanently channeled to the Asbestos Personal Injury Trust pursuant to the Permanent

Channeling Injunction and such Claim may thereafter be asserted exclusively against the

Asbestos Personal Injury Trust in accordance with the Trust Distribution Procedures and, with

respect to Potential CNA Trust Claims, the Addendum. Holders of such Claims are, subject to

the Trust Distribution Procedures, enjoined from filing any future litigation, claims or causes of

action arising out of such Claims against Protected Parties and any Settling Insurance Entities

and may not proceed in any manner against the Protected Parties or any Settling Insurance

Entities in any state or federal court or administrative or arbitral forum, and are required to

pursue their Claims against the Asbestos Personal Injury Trust solely as provided in the Trust

Distribution Procedures and, with respect to Potential CNA Trust Claims, the Addendum.

      6.7    Workers Compensation Claims. (Class 6) Class 6 Claims are unimpaired. The

holders of Class 6 Claims shall be entitled to have their Claims determined and paid pursuant to

workers compensation insurance in accordance with the applicable statutory, regulatory and

other procedures governing Workers Compensation Claims.

6.8     Equity Interests. (Class 7). Class 7 Equity Interests are unimpaired. The holder of the Class 7 Equity Interests is unimpaired and shall retain its Equity Interests in the Debtors.

## ARTICLE VII

## MEANS FOR EXECUTION OF THE PLAN

7.1     Creation of the Asbestos Personal Injury Trust. On the Effective Date, the Asbestos Personal Injury Trust shall be created and established, pursuant to the terms of the Asbestos Personal Injury Trust Documents, as a designated settlement fund or a qualified settlement fund, within the meaning of Section 468B of the Internal Revenue Code and the regulations issued by the Internal Revenue Service pursuant to said statute.

7.2     Execution of Insurance Rights Transfer Agreement. On the Effective Date, the Debtors and the Asbestos Personal Injury Trust shall execute the Insurance Rights Transfer Agreement, and such agreement shall thereupon be the valid, binding, and enforceable obligation of each party thereto in accordance with the terms thereof.

7.3     Assumption of Liabilities By the Asbestos Personal Injury Trust. On the Effective Date, the Asbestos Personal Injury Trust will assume all liability and all responsibility to satisfy all Trust Claims against the Protected Parties. In addition, in consideration for the agreement of BRSC to transfer certain of its insurance rights to the Asbestos Personal Injury Trust and to be a joint obligor on the Promissory Note, the Asbestos Personal Injury Trust will assume all liability and responsibility to satisfy all Asbestos Personal Injury Claims, Indirect Asbestos Personal Injury Claims or Demands asserted against BRSC if (i) BRSC files a petition under Chapter 11 of the Bankruptcy Code and (ii) obtains confirmation of a Chapter 11 plan providing for the assumption by the Asbestos Personal Injury Trust of liability and responsibility to satisfy Asbestos Personal Injury Claims, Indirect Asbestos Personal Injury Claims or Demands asserted against BRSC. The Committee, the Legal Representative, the Trustees(s) and

25

the TAC shall not oppose confirmation of any plan proposed by BRSC that provides for the

assumption by the Asbestos Personal Injury Trust of liability and responsibility to satisfy

Asbestos Personal Injury Claims, Indirect Asbestos Personal Injury Claims or Demands asserted

against BRSC.

7.4    Imposition of Permanent Channeling Injunction.  From and after the Effective

Date, all Trust Claims will be subject to the Permanent Channeling Injunction pursuant to

Section 524(g) of the Bankruptcy Code and the provisions of this Plan and the Confirmation

Order.  From and after the Effective Date, the Protected Parties and any Settling Insurance

Entities shall have no obligation to pay any liability of any nature or description arising out of

Trust Claims, provided, however, that nothing in this Plan shall preclude any action by the

Asbestos Personal Injury Trust to enforce the terms of the Plan or a Subject Insurance Settlement

Agreement entered into by a Settling Insurance Entity.

7.5    Appointment of Trustees.  The Trustees for the Asbestos Personal Injury Trust

initially shall be those individuals selected by the Committee and the Legal Representative and

disclosed to the Bankruptcy Court prior to the conclusion of the hearing on confirmation of this

Plan.

7.6    Preservation of Rights and Defenses.  The Asbestos Personal Injury Trust shall

have, with respect to each Trust Claim, among other things, all rights and defenses whatsoever

under bankruptcy and non-bankruptcy law, affirmative defenses, rights of setoff and recoupment,

counterclaims and rights of contribution, reimbursement, subrogation and indemnity (i) that the

Protected Parties would have had under applicable law if the holder of such Trust Claim had

asserted such Trust Claim against one or more of the Protected Parties, and (ii) that the Debtors

now have or ever had, except as waived by the Trust Distribution Procedures.  The Asbestos

Personal Injury Trust may, in its sole discretion, afford any Entity, including any Insurance

Entity, the opportunity to participate in the resolution of any Asbestos Personal Injury Claim.

7.7      Trust Distribution Procedures and Addendum.  The Asbestos Personal Injury

Trust shall implement the Trust Distribution Procedures and the Addendum in accordance with

their respective terms and the terms of the Asbestos Personal Injury Trust Agreement.

7.8      Pledge of Voting Securities.  The obligations of the Reorganized Debtors  to pay

the deferred Cash portion of the Asbestos Personal Injury Trust Contribution shall be

memorialized by the Promissory Note.  The Promissory Note shall be secured by the pledge of

fifty-one percent (51%) of the voting shares of Burns and Roe Group, Inc. in accordance with the

terms of the Settlement and Pledge Agreement.  The Asbestos Personal Injury Trust shall be

entitled to foreclose on the pledge of these voting shares upon the occurrence of an event of

default under the terms of the Promissory Note and the Settlement and Pledge Agreement and

the expiration of the grace periods provided for therein.

7.9      Reduction of Insurance Judgments.  Any right, claim or cause of action that an

Insurance Entity may have been entitled to assert against any Settling Insurance Entity but for

the Permanent Channeling Injunction if any such right, claim, or causes of action exist under

applicable non-bankruptcy law, shall be channeled to and become a right, claim or cause of

action solely as a setoff claim solely against the Asbestos Personal Injury Trust and not against

or in the name of the Settling Insurance Entity in question.  Any such right, claim, or cause of

action to which an Insurance Entity may be entitled, shall be solely a setoff against any recovery

of the Asbestos Personal Injury Trust from that Insurance Entity, and only to the extent such a

setoff is unavailable shall that Insurance Entity receive an affirmative recovery of funds from the

Asbestos Personal Injury Trust for such right, claim, or cause of action.  Any such right of setoff

or recovery in favor of an Insurance Entity shall not constitute a classified or unclassified Claim under this Plan and shall not be subject to or impaired by this Plan. Instead, any such right of setoff or recovery shall be determined, calculated and applied solely as a matter of applicable non-bankruptcy law without regard to this Plan or any bankruptcy law or decision.

7.10    Claims Attaching to Settlement Proceeds. Except as provided in Section 7.9 of this Plan, any claim of an Entity that attaches to the proceeds of (a) the Hartford Settlement Agreement, pursuant to the Hartford Settlement Agreement and/or the Order Approving Settlement Agreement and Enjoining Claims Against the Hartford Parties entered by the Bankruptcy Court on February 17, 2005, (b) the Century Settlement Agreement, pursuant to the Century Settlement Agreement and/or the Order Authorizing Debtors to enter into a Settlement and Compromise of Certain Claims and related Escrow Agreement etc. entered by the Bankruptcy Court on April 23, 2008, and (c) any other settlement agreements that are entered into by the Debtors and Insurance Entities providing for liens to attach to the settlement proceeds and/or the orders approving such settlement agreements, shall be satisfied solely by way of setoff of the proceeds of such settlement agreements against any recovery of the Asbestos Personal Injury Trust from the Entity holding such claim and under no circumstances shall the Entity holding such claim receive an affirmative recovery of funds from the Asbestos Personal Injury Trust.

7.11    Pursuit of Insurance Proceeds. Subject to the provisions of Section 1.2(c) of the Addendum, applicable exclusively to CNA, at the reasonable direction and request of the Asbestos Personal Injury Trust, and at the expense of the Asbestos Personal Injury Trust, the Burns and Roe Parties shall pursue any Insurance Rights for the benefit of and to the fullest extent required by the Asbestos Personal Injury Trust by negotiation, or if necessary, by the

28

initiation and prosecution of all appropriate and necessary legal action to secure such Insurance

Rights and shall take such other action as the Asbestos Personal Injury Trust may reasonably

request, including granting a security interest in the Insurance Rights.  Each Burns and Roe

Party, as applicable, shall immediately transfer any amounts recovered under or on account of

the Insurance Rights to the Asbestos Personal Injury Trust; provided, however, to the extent that

any such amounts are held by or under the control of a Burns and Roe Party, such amounts shall

be held in trust for the benefit of the Asbestos Personal Injury Trust.  No Burns and Roe Party

shall commence or pursue any Claim against an Insurance Entity with respect to any Insurance

Rights without the prior written consent of the Asbestos Personal Injury Trust.  The Burns and

Roe Parties shall cede to the Asbestos Personal Insurance Trust all control of the pursuit of any

and all Claims with respect to the Insurance Rights, and the Asbestos Personal Injury Trust shall

have the right to reasonable control and direction with respect to the choice of counsel and

conduct of all proceedings.

    7.12    Orders in Aid of this Plan.  Pursuant to Section 105(a) of the Bankruptcy Code,

no Entity shall be permitted to take any action against or seek payment from any Insurance

Entity under any Subject Insurance Policy or Subject Insurance Settlement Agreement based

upon, arising out of, or attributable to any Trust Claim or Insurance Rights, whenever and

wherever arisen or asserted (including all such Claims in the nature of or sounding in tort,

contract, warranty, contribution, or any other theory of law, equity, or admiralty), except as

authorized by the Trust in accordance with the Asbestos Personal Injury Trust Documents

    7.13    Effect of Receiving Payment from the Asbestos Personal Injury Trust.  Any

holder of a Trust Claim who accepts payment from the Asbestos Personal Injury Trust shall be

deemed to have finally and completely released and waived any and all asbestos-related Claims,

including Trust Claims, against any of the Settling Insurance Entities that are attributable to the

activities of the Burns and Roe Parties, the Subject Insurance Policies (as defined in the Century

Settlement Agreement and the Hartford Settlement Agreement), the Subject Policies (as defined

in the Travelers Settlement Agreement), the Asbestos Released Policies (as defined in the

Travelers Settlement Agreement), the Other Century Policies (as defined in the Century

Settlement Agreement) or the Excepted Policies (as defined in the Hartford Settlement

Agreement) applicable to each of the following Settling Insurance Entities (as defined in the

corresponding Subject Insurance Settlement Agreements): the Hartford Parties, the Travelers

Parties, and the Century Parties.

 7.14 Indemnification by the Asbestos Personal Injury Trust.

  (a) Beginning on the Applicable Date, and subject to the terms set

forth in Sections 7.14 (b) through 7.14 (e) of this Plan, the Asbestos Personal Injury Trust shall

fully indemnify the Burns and Roe Parties for all Cooperation Expenses.

  (b) Upon payment by the Burns and Roe Parties of any Cooperation

Expenses, they shall provide to the Asbestos Personal Injury Trust proof of payment thereof.

  (c) Proof of payment of Cooperation Expenses shall be delivered by

overnight mail to the Trustee(s) of the Asbestos Personal Injury Trust and to any attorney or

agent designated by the Asbestos Personal Injury Trust.

  (d) The Burns and Roe Parties shall not undertake any activity or incur

any expense that would give rise to Cooperation Expenses in excess of $5,000 without obtaining

prior written approval for such activity or expense from the Asbestos Personal Injury Trust or the

Asbestos Personal Injury Trust's designated attorney or agent.  The Asbestos Personal Injury

Trust shall not unreasonably withhold such approval.  In the event that approval from the

30

Asbestos Personal Injury Trust is not obtained prior to the incurring of such Cooperation

Expenses, the Asbestos Personal Injury Trust shall not be required to indemnify the Burns and

Roe Parties for such Cooperation Expenses.  To the extent the Asbestos Personal Injury Trust

withholds approval required under this Section 7.14, the Burns and Roe Parties shall not be

required to undertake any activity or incur any expense that would give rise to Cooperation

Expenses.

(e)    Cooperation Expenses incurred by the Burns and Roe Parties shall

be paid by the Asbestos Personal Injury Trust to the Burns and Roe Parties promptly (and, in any

event, no later than 45 days) after the Asbestos Personal Injury Trust's receipt of proof of

payment in accordance with Sections 7.14 (b) (c) and (d), provided, however, that the Asbestos

Personal Injury Trust shall not be required to make any payment pursuant to this Section 7.14

until 45 days after the Applicable Date.

7.15    BBRRCo.  Upon its formation, the Asbestos Personal Injury Trust shall form a

single purpose wholly-owned subsidiary of the Trust (which may be a corporation or a limited

liability company) to be known as "BBRRCo.," which shall exist solely for the purpose of

resolving Potential CNA Trust Claims through litigation or settlement pursuant to the

Addendum, and which, upon and after its formation, shall have no assets, operations, business,

activities or obligations of any nature except as set forth in the Addendum and shall not be an

Affiliate (as defined in Paragraph 1.1(22)(i) of this Plan) of any Burns and Roe Party.

## ARTICLE VIII

## CONDITIONS PRECEDENT

8.1    Conditions to Confirmation.  The following conditions must occur and be

satisfied, or be waived, on or before the Confirmation Date:

31

The following findings shall have been made in the Confirmation Order, unless expressly waived by the Debtors, the Committee, and the Legal Representative:

(a)    The Permanent Channeling Injunction is to be implemented in connection with the creation and implementation of the Asbestos Personal Injury Trust.

(b)    At the time of the order for relief, one or more of the Debtors had been named as a defendant in personal injury, or wrongful death, actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos and asbestos-containing products.

(c)    The Asbestos Personal Injury Trust, as of the Effective Date, will assume the liabilities of the Debtors with respect to Trust Claims.

(d)    The Asbestos Personal Injury Trust is to be funded as provided for in this Plan.

(e)    Winona Hudson Corporation has pledged fifty-one (51%) percent of its voting shares in Burns and Roe Group, Inc. to secure the deferred obligations of the Reorganized Debtors as set forth in the Plan.

(f)    The Asbestos Personal Injury Trust shall use its assets or income to pay for its operating expenses and to pay Trust Claims.

(g)    The Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos Personal Injury Claims and Indirect Asbestos Personal Injury Claims that are addressed by the Permanent Channeling Injunction.

(h)    The actual amounts, numbers and timing of such future Demands cannot be determined.

32

(i)      Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Trust Claims.

(j)      The terms of the Permanent Channeling Injunction, issued pursuant to Section 524(g)(4)(A) of the Bankruptcy Code, are set forth in the Plan and in the Disclosure Statement.

(k)      The Plan establishes, in Class 5 thereof, a separate class of Asbestos Personal Injury Claims and Indirect Asbestos Personal Injury Claims to be addressed by the Asbestos Personal Injury Trust.

(l)      The holders of Class 5 Claims, voting as a separate class, have voted, by at least 75 percent (75%) in number of those voting, in favor of the Plan.

(m)      Pursuant to court orders or otherwise, the Asbestos Personal Injury Trust will operate through mechanisms such as structured, periodic, or supplemental payments, *pro rata* distributions, matrices, or periodic review of estimates of the numbers and values of Trust Claims, or other comparable mechanisms, that provide reasonable assurance that the Asbestos Personal Injury Trust will value, and be in a financial position to pay, Trust Claims that involve similar claims in substantially the same manner.

(n)      The Legal Representative was duly appointed pursuant to Section 524(g) of the Bankruptcy Code as part of the proceedings leading to issuance of the Permanent Channeling Injunction, for the purpose of protecting the rights of Entities that hold, or that might subsequently assert, Demands that are bound or will be bound by the Permanent Channeling Injunction and channeled to the Asbestos Personal Injury Trust.

(o)      The identification and designation of each Protected Party and Settling Insurance Entity is fair and equitable with respect to Entities that might subsequently

33

assert Demands against any such Protected Party and/or Settling Insurance Entity, in light of the

benefits provided, or to be provided, to the Asbestos Personal Injury Trust by or on behalf of the

Protected Parties and any such Settling Insurance Entity.

     8.2     Conditions to Effectiveness of Plan.  The following conditions must occur and be

satisfied, or be waived, for the Effective Date to occur:

     (a)     The Confirmation Order and the Affirming Order shall have

become Final Orders.

     (b)     The Trustee(s) of the Asbestos Personal Injury Trust, the members

of the TAC and the Legal Representative shall have been selected and shall have agreed, in

writing, to serve.

     (c)     The Trustee(s) of the Asbestos Personal Injury Trust and the

Debtors shall have executed the Asbestos Personal Injury Trust Agreement.

     (d)     The Debtors shall have executed and delivered the Promissory

Note and the Settlement and Pledge Agreement as provided in Section 7.8 of this Plan.

     8.3     Waiver of Conditions.  None of the conditions contained in Sections 8.1 and

Section 8.2 hereof may be waived, in whole or in part, except jointly by the Debtors, the

Committee and the Legal Representative, in a writing to be filed with the Bankruptcy Court.

## ARTICLE IX

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

     9.1     Assumption/Rejection.  Pursuant to Section 1123(b)(2) of the Bankruptcy Code,

all executory contracts and unexpired leases of the Debtors that have not already been assumed

or rejected shall be deemed assumed as of the Effective Date unless there is then pending before

the Bankruptcy Court a motion for the rejection of such executory contract and/or unexpired

34

lease. If such a motion is then pending, the contract(s) or lease(s) that are the subject of such

motion(s) shall be assumed or rejected as and when determined by such motion(s).

9.2     Claims Based on Assumption or Rejection of Executory Contracts or Unexpired

Leases.  An Allowed Claim arising from the assumption or rejection of an executory contract or

an unexpired lease shall be classified and treated as a Class 3 Claim. All proofs of Claim with

respect to Claims arising from the assumption or rejection, pursuant to this Article IX, of

executory contracts or unexpired leases must be filed with the Bankruptcy Court on or before the

later to occur of: (i) thirty (30) days after the date of entry of an order of the Bankruptcy Court

approving such assumption or rejection, or if assumption is pursuant to this Plan, 30 days after

the Confirmation Date, or such Claims shall be forever barred against the Debtors and their

estates and the assets and properties of the Reorganized Debtors and the Asbestos Personal

Injury Trust. Any Entity that fails to file proof of its Claim arising from such assumption or

rejection within the period set forth above shall be forever barred from asserting a Claim against

the Debtors, the Reorganized Debtors or the Asbestos Personal Injury Trust, or the property or

interests in property of the Debtors, the Reorganized Debtors or the Asbestos Personal Injury

Trust.

## ARTICLE X

## IMPLEMENTATION OF THIS PLAN

10.1     Vesting of Property.

(a)     Except as provided in the Insurance Rights Transfer Agreement, on

the Effective Date, all right, title and interest in property of the Debtors shall vest in the

Reorganized Debtors in accordance with Sections 1123(a)(5) and 1141 of the Bankruptcy Code

free and clear of all Claims, Demands, Interests, liens and encumbrances, (excluding the Class 2

liens retained pursuant to this Plan).

35

(b)     The Debtors, Winona Hudson Corporation, Burns and Roe Group, Inc., the Committee, the Legal Representative, and the Asbestos Personal Injury Trust shall execute all documents and take all other action required to effectuate the Settlement and Pledge Agreement, the Trust Contribution and the Insurance Rights Transfer.

(c)     Except for the rights provided for by the Plan, the holder of a Claim, Demand, Interest, note or other instrument shall have no rights against the Debtors or the Reorganized Debtors arising from or relating to such Claim, Demand, Interest, note or other instrument on and after the Effective Date.

10.2    Certificate of Incorporation and By-laws.  The certificate of incorporation and the by-laws of the Debtors in effect as of the day preceding the Effective Date shall remain in full force and effect except that the Certificate of Incorporation and By-laws of the Debtors, the Reorganized Debtors, Burns and Roe Group, Inc., and Winona Hudson Corporation shall be deemed amended as of the Effective Date to prohibit (a) the issuance of any nonvoting equity securities, and (b) any voting securities that would dilute the percentage of the voting securities pledged to the Asbestos Personal Injury Trust to less than fifty-one percent (51%) of the issued and outstanding shares of Burns and Roe Group, Inc.

10.3    Corporate Authority.  The entry of the Confirmation Order shall constitute direction and authorization to and of the Debtors and the Reorganized Debtors to take or cause to be taken any corporate action necessary or appropriate to consummate the provisions of this Plan, including without limitation, taking all action to implement the Settlement and Pledge Agreement, the Trust Contribution and the Insurance Rights Transfer and to issue and deliver the Promissory Note and the Settlement and Pledge Agreement pursuant to Section 7.8 of this Plan and all such actions taken or caused to be taken shall be deemed authorized and approved in all

36

respects without any further action by the stockholders or directors of the Debtors or the

Reorganized Debtors.

      10.4    Term of Existing Injunctions or Stays.  Unless otherwise provided in the Plan, in

the Confirmation Order, the Affirming Order or the Permanent Channeling Injunction, all

injunctions or stays in effect in the Cases under Sections 105(a) or 362 of the Bankruptcy Code,

or otherwise, and existing on the Confirmation Date, shall remain in full force and effect until

and including the Effective Date.

**ARTICLE XI**

**EFFECTS OF PLAN CONFIRMATION**

      11.1    Discharge and Injunction.    Except as specifically provided by this Plan and the

Asbestos Personal Injury Trust Documents,

      (a)    On the Effective Date, all Claims against, liabilities of, and/or obligations

of the Debtors or the Reorganized Debtors, all Demands against the Debtors or Reorganized

Debtors, and all liens or interests in the respective assets and property of the Debtors or the

Reorganized Debtors, based on any act or omission, transaction or other activity or security,

instrument or other agreement of any kind or nature, that occurred, arose, or existed prior to the

Effective Date, whether known or unknown, are discharged, regardless of whether a proof of

Claim was filed, the Claim was Allowed, or the holder of such Claim or Demand voted on this

Plan, provided however, that nothing contained in this paragraph 11.1(a) shall be deemed to

release and/or discharge the Asbestos Personal Injury Trust from making any distribution it is

required to make to any Trust Claimant pursuant to other provisions of this Plan or the Asbestos

Personal Injury Trust Documents.

      (b)    The discharges set forth in this Section 11.1 shall also act as an injunction

against any Entity commencing or continuing any action, employment of process or act to

37

collect, offset, affect or recover any Claim, demand, interest or cause of action discharged
hereunder, except to the extent otherwise specifically provided in this Plan.

      11.2    Permanent Channeling Injunction.  On and after the Effective Date, the Protected
Parties and any Settling Insurance Entities shall have the benefits and protections of the
Permanent Channeling Injunction.

      11.3    Exculpation.  Except as otherwise provided in the Plan, to the extent permissible
by law applicable as of the Effective Date to cases under the Bankruptcy Code in the District of
New Jersey, as such law may be extended or interpreted subsequent to the Effective Date, none
of the Exculpated Parties shall have or incur any liability to any Entity for any act or omission in
connection with or arising out of the formulation, preparation, dissemination, prosecution,
confirmation, consummation, discussion, implementation or administration of this Plan, the
Disclosure Statement, any contract, release, or other agreement or document created or entered
into in connection with this Plan, the property to be distributed under the Plan, or any other
action or omission in connection with these Cases or this Plan to and including the Effective
Date, except for gross negligence, fraud or willful misconduct, and each of the Debtors, the
Committee and the Legal Representative shall be entitled to rely upon the good faith and
informed advice of counsel with respect to their duties and responsibilities under the Plan.

      11.4    Insurance Neutrality.  Subject to Paragraphs 1.1(50), 7.9 and 11.2 of this Plan, the
Asbestos Personal Injury Trust, the Debtors, the Reorganized Debtors and the Insurance Entities
shall retain their respective rights, if any, under applicable law (and the rights of their
predecessors, if any), to assert or to oppose any rights, claims or defenses under, arising from, or
in connection with any Subject Insurance Policy, Subject Insurance Settlement Agreement or the
Plan.

**ARTICLE XII**

**MISCELLANEOUS PROVISIONS**

12.1    Retention of Jurisdiction.  From and after the Effective Date and except as

provided in Section 12.2 of this Plan and the Trust Distribution Procedures, the Bankruptcy

Court shall retain and have exclusive jurisdiction for the purpose of determining all disputes and

other issues presented by or arising under this Plan including, without limitation, the following

matters:

(a)    to allow, disallow, estimate, liquidate or determine any Claim

(other than a Trust Claim) against or Interest in the Debtors, to enter or enforce any order

requiring the filing of any Claim (other than a Trust Claim) or Interest before a particular date,

and to resolve any and all disputes relating to any Claim (other than a Trust Claim) or Interest;

(b)    to determine requests for payment of Claims entitled to priority

under Section 507(a)(1) of the Bankruptcy Code, including any and all interim and final

applications for the allowance of Fee Claims;

(c)    to resolve any and all controversies and disputes regarding the

interpretation and enforcement of the Plan as may be necessary to effectuate its consummation

and full and complete implementation;

(d)    to enter orders in aid of the execution of this Plan, the Permanent

Channeling Injunction, and the discharges provided for in this Plan, including, without

limitation, appropriate orders (which may include contempt or other sanctions) to protect the

Protected Parties or the Exculpated Parties from actions prohibited under Sections 11.1, 11.2 and

11.3 of this Plan;

(e)    to remedy any defect or omission or reconcile any inconsistency in

the Confirmation Order;

39

(f)        to determine any and all applications, motions, adversary proceedings and contested matters pending on the Effective Date and arising under, arising in or related to the Cases or this Plan, including any remands of appeals that may be pending on the Effective Date;

(g)        to enforce the provisions of this Plan relating to the distributions to be made hereunder;

(h)        to resolve any action brought to avoid or otherwise determine the validity, extent, enforceability, priority and perfection of any lien or other encumbrance on any property of the Debtors;

(i)        to determine any and all pending applications for the rejection or disaffirmance of executory contracts or leases, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(j)        to resolve any disputes concerning any reserve established for Disputed Claims or the administration thereof;

(k)        to resolve any disputes concerning any alleged act or omission of an Exculpated Party in connection with or arising out of the formulation, preparation, dissemination, prosecution, confirmation, consummation, discussion, implementation or administration of this Plan, the Disclosure Statement, any contract, release, or other agreement or document created or entered into in connection with this Plan, the property to be distributed under the Plan, or any other alleged action or omission in connection with these Cases or this Plan;

(l)        to resolve any disputes concerning whether an Entity had sufficient notice of the Cases, any applicable Claims bar date, the hearing on the approval of the Disclosure

40

2370-1

Statement as containing adequate information, and the hearing on the confirmation of this Plan

for the purpose of determining whether a Claim, Demand or Interest is channeled, satisfied or

discharged hereunder or for any other purpose;

                (m)     to determine such other matters as may be set forth in the

Confirmation Order or that may arise in connection with the implementation of this Plan;

                (n)     to consider any modification of this Plan;

                (o)     to enter a final decree closing the Cases; and

                (p)     to exercise jurisdiction over issues arising out of the Addendum to

the extent specified therein.

      12.2     Retention of Non-Exclusive Jurisdiction.  From and after the Effective Date, to

the extent permitted by law the Bankruptcy Court shall retain and have non-exclusive

jurisdiction to hear and decide all issues pertaining to the Insurance Rights, the Insurance Rights

Transfer Agreement, and the Subject Insurance Settlements and to issue injunctions pursuant to

Section 105 of the Bankruptcy Code to protect the Insurance Rights.

      12.3     Withdrawal of this Plan.  The Debtors reserve the right, upon the prior written

consent of the Committee and the Legal Representative, to revoke and withdraw this Plan as the

plan of reorganization for the Debtors' Cases, at any time prior to the entry of the Confirmation

Order or, if the conditions set forth in Section 8.2 hereof cannot be satisfied for any reason after

the Confirmation Date, at any time up to the Effective Date. If the Debtors revoke or withdraw

this Plan or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be

deemed null and void.

      12.4     Modification of this Plan.  Prior to the entry of the Confirmation Order, the

Debtors reserve the right, upon the written consent of the Committee and the Legal

Representative, and in accordance with the Bankruptcy Code, to amend or modify this Plan, and

after the entry of the Confirmation Order, the Debtors may, upon the written consent of the

Committee and the Legal Representative, upon order of the Court, amend or modify this Plan in

accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or

reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the

purpose and intent of this Plan.

12.5    Tax Provision.  The issuance, transfer or exchange of a security, or the making,

delivery or recording of a deed or other instrument of transfer under this Plan shall constitute the

issuance, transfer or exchange of a security or the making or delivery of an instrument of transfer

within the meaning of Section 1146(c) of the Bankruptcy Code, and shall not be taxed either to

the Debtors' estates, as seller, or to the transferee or recipient thereof under any law imposing a

stamp tax or similar tax

12.6    Payment of Fees of United States Trustee.  All fees due and payable to the United

States Trustee as required by 28 U.S.C. §1930(a)(6) shall be paid by the Debtors and the

Reorganized Debtors as and when due.

12.7    Disputed Claims Other than Trust Claims

(a)    Objections to Claims Other than Trust Claims

Only Claims that are Allowed shall be entitled to distributions under the Plan.  Except for

claims expressly Allowed in the Plan, the Debtors reserve the sole and absolute right to contest

and object to any Claims filed or asserted in the Cases including, without limitation, those

Claims that (a) are not listed in the Schedules filed by the Debtors with the Bankruptcy Court

pursuant to Bankruptcy Rule 1007, as such Schedules may be amended or supplemented from

time to time pursuant to Bankruptcy Rule 1009, (b) listed on the Schedules as disputed,

contingent and/or unliquidated in amount, or (c) listed on the Schedules at a lesser amount than

42

asserted by the holder of such Claim.  Unless otherwise ordered by the Bankruptcy Court, all

objections to Claims (other than Administrative Expense Claims) shall be filed and served upon

counsel to the Debtors, and the holder of the Claim objected to on or before the later of (a) 90

days after the Effective Date and (b) 90 days after the date (if any) on which a proof of claim is

filed in respect of such Claim, or such other date determined by the Bankruptcy Court upon

motion to the Bankruptcy Court without further notice or hearing.

> (b)    Procedures For Resolving Disputed Claims

Unless otherwise ordered by the Bankruptcy Court or agreed to by written stipulation of

the Debtors, the Debtors shall litigate the merits of each Disputed Claim until determined by a

Final Order.

> (c)    Timing of Payments and Distributions With Respect to Disputed Claims

Subject to the provisions of this Plan, payments and distributions with respect to each

Disputed Claim that becomes an Allowed Claim, and that would have otherwise been made had

the Allowed Claim been an Allowed Claim on the Effective Date, shall be made within thirty

(30) days after the date that such Disputed Claim becomes an Allowed Claim.  Holders of

Disputed Claims that become Allowed Claims shall be bound, obligated and governed in all

respects by the provisions of this Plan.

12.8    Estimation of Claims Other Than Trust Claims.  The Debtors may, at any time,

request that the Bankruptcy Court, on proper notice,  estimate any Disputed Claim pursuant to

Section 502(c) of the Bankruptcy Code and the Bankruptcy Court will retain jurisdiction to

estimate any Claim at any time during litigation concerning any objection to any Claim,

including during the pendency of any appeal relating to any such objection.  If the Bankruptcy

Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed

amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy

43

Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors

may elect to pursue any supplemental proceedings to object to any ultimate distribution to such

Claim.  All of the objection, estimation, settlement and resolution procedures set forth in the Plan

are cumulative and not necessarily exclusive of one another.  Claims may be estimated and

subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the

Bankruptcy Court.

     12.9    Treatment and Payment of Trust Claims.  Trust Claims shall be liquidated in

accordance with the Trust Distribution Procedures and, with respect to Potential CNA Trust

Claims, the Addendum.  Trust Claims shall be paid to the extent permitted under the Trust

Distribution Procedures and, with respect to Potential CNA Trust Claims, the Addendum.

     12.10  Notices.  All notices or requests made in connection with this Plan shall be in

writing and will be deemed to have been given when received by first class mail, postage prepaid

or by overnight courier addressed to:

If to the Debtors:

               Sills Cummis & Gross PC
               One Riverfront Plaza
               Newark, New Jersey 07102
               Attention: Jack M. Zackin, Esq.

If to the Committee:

               Caplin and Drysdale, Chartered
               One Thomas Circle, NW
               Washington, D.C.  20005
               Attention: Peter Van N. Lockwood, Esq.

with a copy to:

               Lowenstein Sandler
               65 Livingston Avenue
               Roseland, New Jersey 07068
               Attention: Jeffrey Prol, Esq.

If to the Legal Representative:

>       Anthony R. Calascibetta
>       c/o Wiss & Company LLP
>       354 Eisenhower Parkway
>       Livingston, New Jersey  07039

With copies to:

>       Pryor Cashman, LLP
>       410 Park Avenue
>       New York, New York 10022
>       Attention: Richard Levy, Jr., Esq.
>
>       and
>
>       Forman, Holt, Eliades & Ravin LLC
>       80 Route 4 East, Suite 290
>       Paramus, New Jersey 07652
>       Attention: Steven B. Ravin, Esq.

All notices and requests to Entities holding any Claim or Interest in any class shall be sent to

them at their last known address or to the last known address of their attorney of record who has

filed a notice of appearance in these Cases. The parties listed above, or any successors thereto,

and any such holder of a Claim or Interest may designate in writing any other address for

purposes of this Section 12.10, which designation will be effective upon receipt.

     12.11   Post-Effective Date Roles of the Committee and the Legal Representative.

Following the  Effective Date, the duties and responsibilities of the Committee and the Legal

Representative in the Cases shall be limited to: (a) participating as parties in interest with respect

to any appeals lodged from the Confirmation Order; (b) continuing with the prosecution of any

adversary proceedings, Claims objections or contested matters commenced prior to the Effective

Date; (c) applying for allowance of fees for services performed and expenses incurred in

connection with the Cases.

12.12   Retiree Benefits.  Pursuant to Section 1129(a)(13) of the Bankruptcy Code, after the Effective Date, the Reorganized Debtors shall continue to pay all "retiree benefits" as defined in Section 1114 of the Bankruptcy Code, at the level established prior to confirmation of the Plan, for the duration of the period the Debtors obligated itself to provide such benefits, if any.

12.13   Debtors' Cooperation with Asbestos Personal Injury Trust.  Subject to the terms set forth in Section 7.14 of the Plan and the provisions of the Addendum, (a) the Debtors shall transfer to the Asbestos Personal Injury Trust such Claim files and other documents related to Asbestos Personal Injury Claims and Indirect Asbestos Personal Injury Claims as are in their custody and control, and (b) the Reorganized Debtors shall cooperate to the extent reasonably requested by the Trustee(s) in the handling of Trust Claims, in the pursuit and protection of Insurance Rights and generally in the operation of the Asbestos Personal Injury Trust for purposes set forth herein and for the duration of the Asbestos Personal Injury Trust, and shall use their best efforts to make available its present or former officers, directors, employees, agents or representatives to the extent that the Trustee(s) deem such persons necessary to appear at any trial or arbitration proceeding relating to the liquidation of Trust Claims.  To the extent that the Reorganized Debtors require any information from the Trustee(s) for preparation of any tax return or financial statement, the Trustee(s) shall cooperate to the extent reasonably requested to provide such information to the Reorganized Debtors and as required by the Addendum.

12.14   Headings.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

BURNS AND ROE ENTERPRISES, INC.
BURNS AND ROE CONSTRUCTION GROUP, INC.
Debtors and Debtors-in-Possession


By: /s/ K. Keith Roe
     K. Keith Roe
     Chief Executive Officer

Dated: June 9, 2008