# EXHIBIT C

BURNS AND ROE
ASBESTOS PERSONAL INJURY SETTLEMENT TRUST AGREEMENT

This Burns and Roe  Asbestos Personal Injury Settlement Trust Agreement (*"Trust Agreement"* or *"Agreement"*), dated the date set forth on the signature page hereof and effective as of the Effective Date of the Plan (as defined below), is entered into by Burns and Roe Enterprises, Inc. ("BREI") and Burns and Roe Construction Group, Inc. ("BRCGI"), the Debtors and debtors-in-possession (the "Debtors") in Case Nos. 00-41610 (RG) and 05-47946 (RG) in the United States Bankruptcy Court for the District of New Jersey, and Burns and Roe Services Corporation ("BRSC" and collectively with the Debtors the "Settlors") as Settlors; the Legal Representative for Future Asbestos Personal Injury Claimants (*"Legal Representative"*); the Official Committee of Unsecured Creditors, which currently consists solely of representatives of asbestos-related personal injury claimants (*"ACC"*); and the Trustees (*"Trustees"*) and the members of the Trust Advisory Committee (*"TAC"*) identified on the signature page hereof and appointed pursuant to the Debtors' confirmed Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, dated November 23, 2005 (*"Plan"*), as such Plan may be amended, modified or supplemented from time to time.  All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference.  All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

WHEREAS, BREI commenced a case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (*"Bankruptcy Court"*), entitled *In re Burns and Roe Enterprises, Inc., Debtor,* Case No. 00-41610 (RG); and

WHEREAS, BRCGI commenced a case under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court, entitled *In  re Burns and Roe Construction Group, Inc., Debtor,* Case No. 05-47946 (RG); and

WHEREAS, at the time of the entry of the orders for relief in the Chapter 11 case, the Debtors were named as defendants in numerous actions involving personal injury or death claims caused by exposure to asbestos-containing products for which the Debtors, their predecessors, successors and assigns have legal liability (*"Asbestos Related Personal Injury Claims"* as defined in the Plan); and

WHEREAS, the ACC and Legal Representative were duly appointed in the Debtors' Chapter 11 cases; and

1

WHEREAS, the Plan was confirmed by an order of the Bankruptcy Court dated _____, 2005, as affirmed by order of the United States District Court for the District of New Jersey dated _____, 2005; and

WHEREAS, the Plan provides, *inter alia*, for the reorganization of the Debtors and for the creation of the Burns and Roe Asbestos Personal Injury Settlement Trust ("*Trust*"); and

WHEREAS, pursuant to the Plan, the Debtors were reorganized on the Effective Date and will engage and are engaging in business thereafter with the benefits, entitlements and protections accorded it as the Reorganized Debtors under the Plan ("*Reorganized Debtors*");

WHEREAS, pursuant to the Plan, the Trust is to use its assets and income to satisfy all Asbestos Related Personal Injury Claims and Indirect Asbestos Related Personal Injury Claims (as defined in the Plan) (collectively "*Trust Claims*"); and

WHEREAS, pursuant to the Plan, BRSC contributed certain of its insurance rights to the Trust and is a co-obligor on the Promissory Note (as defined in the Plan);

WHEREAS, it is the intent of the Settlors, the Trustees, the ACC, the TAC, and the Legal Representative that the Trust be administered, maintained, and operated at all times through mechanisms that provide reasonable assurance that the Trust will satisfy all Trust Claims pursuant to the Burns and Roe Asbestos Personal Injury Trust Distribution Procedures ("*TDP*") [attached hereto as Exhibit 1], in substantially the same manner, and in strict compliance with the terms of this Trust Agreement; and

WHEREAS, pursuant to the Plan, the Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code, as amended ("*IRC*"); and

WHEREAS, the Bankruptcy Court has determined that the Trust and the Plan satisfy all the prerequisites for an injunction pursuant to section 524(g) of the Bankruptcy Code, and such injunction has been entered in connection with the Plan and the Confirmation Order ("*Permanent Channeling Injunction*");

NOW, THEREFORE, it is hereby agreed as follows:

## SECTION 1

## AGREEMENT OF TRUST

1.1    Creation, Name and Situs. BREI, BRCGI and BRSC, as Settlors, hereby create a trust known as the "Burns and Roe Asbestos Personal Injury Settlement Trust," which is the Trust provided for and referred to in the Plan and defined in this Agreement as the "Trust" or the

"Trust." The Trustees of the Trust may transact the business and affairs of the Trust in the name of the Trust. The situs of the Trust shall be within the State of New Jersey.

1.2   **Purpose**. The purpose of the Trust is to assume the liabilities of the Protected Parties (as defined in the Plan) for all Trust Claims, and to use the Trust's assets and income (including insurance rights) to pay the holders of all Trust Claims in accordance with this Trust Agreement and the TDP in such a way that all existing and future holders of Trust Claims are treated fairly, equitably and reasonably in light of the limited assets of the Trust available to satisfy such claims, and otherwise to comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code.

1.3   **Transfer of Assets**. Pursuant to the Plan, the portion of the Asbestos Personal Injury Trust Contribution (as defined in the Plan) that is currently due has been paid by the Settlors, and certain additional consideration and collateral required under the Promissory Note, the Settlement and Pledge Agreement and the Asbestos Insurance Rights Assignment Agreement (each as defined in the Plan) have been and/or will be transferred, assigned and/or pledged to the Trust by the Settlors in accordance with their terms, to settle and discharge all Trust Claims as against the Protected Parties. Pursuant to the Plan and the foregoing documents, the Settlors, the Reorganized Debtors and others may also transfer and/or assign additional or other assets to the Trust from time to time after the Effective Date. (All assets identified or described in the preceding sentences of this section are defined collectively as the "*Trust Assets*"). In all events, the Trust Assets will be transferred to the Trust free and clear of any liens, claims or encumbrances held or asserted by the Settlors, the Reorganized Debtors, any creditor, or other entity. The Settlors, the Reorganized Debtors, and any other transferors shall also execute and deliver such documents to the Trust as the Trustees may reasonably request to transfer the Trust Assets to the Trust.

1.4   **Acceptance of Assets and Assumption of Liabilities**

(a)   In furtherance of the purposes of the Trust, the Trustees, on behalf of the Trust, hereby expressly accept the transfer to the Trust of the Trust Assets due and payable on the Effective Date, and that will thereafter become payable to the Trust, or that may thereafter be transferred or assigned to the Trust, at the time and in the manner contemplated by the Plan.

(b)   In furtherance of the purposes of the Trust, the Trustees, on behalf of the Trust, solely in their capacity as Trustees and not in their individual capacities, expressly assume all liability and responsibility for all Trust Claims asserted against or that could be asserted against the Protected Parties. Except as otherwise provided in this Trust Agreement and the TDP, the Trust and the Trustees shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that the Debtors or the Reorganized Debtors have or would have had under applicable law. Regardless of the foregoing, however, a claimant must meet otherwise applicable federal, state and foreign statutes of limitations and repose, except as otherwise provided in the TDP.

#978816 v1                                           3

(c)     In furtherance of the purposes of the Trust, the Trustees, on behalf of the Trust, solely in their capacity as Trustees and not in their individual capacities, will expressly assume all liability for all Asbestos Personal Injury Claims, Indirect Asbestos Personal Injury Claims or Demands (as such terms are defined in the Plan) asserted against BRSC if BRSC (i) files a Petition under Chapter 11 of the Bankruptcy Code and (ii) obtains confirmation of a Chapter 11 Plan providing for the assumption by the Trust of liability and responsibility to satisfy Asbestos Personal Injury Clams, Indirect Asbestos Personal Injury Claims or  Demands asserted against BRSC.

(d)     No provision herein or in the TDP shall be construed to mandate distributions on any claims or other actions that would contravene the Trust's compliance with the requirements of a qualified settlement fund within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

(e)     The Reorganized Debtors shall be entitled to indemnification from the Trust for any expenses, costs, and fees (including reasonable attorneys' fees and costs, but excluding any such expenses, costs, and fees incurred prior to the Effective Date), judgments, settlements, or other liabilities arising from or incurred as a result of any Trust Claims, including, but not limited to, indemnification or contribution for such claims prosecuted against the Reorganized Debtors.

(f)     Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Permanent Channeling Injunction issued in connection with the Plan or the Trust's assumption of all liability for Trust Claims as against the Protected Parties, subject to the provisions of Section 1.4(b) above.

## SECTION 2

## POWERS AND TRUST ADMINISTRATION

### 2.1   Powers.

(a)     The Trustees are and shall act as the fiduciaries to the Trust in accordance with the provisions of this Trust Agreement and the Plan.  The Trustees shall, at all times, administer the Trust and the Trust Assets in accordance with the purposes set forth in Section 1.2 above.  Subject to the limitations set forth in this Trust Agreement, the Trustees shall have the power to take any and all actions that, in the judgment of the Trustees, are necessary or proper to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto, and any trust power now or hereafter permitted under the laws of New Jersey.

(b)     Except as required by applicable law or otherwise specified herein, the Trustees need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder, but may, in their discretion, seek instructions from a court of competent jurisdiction including, but not limited to, the Bankruptcy Court.

(c)    Without limiting the generality of Section 2.1(a) above, and except as limited below, the Trustees shall have the power to:

(i)    receive and hold the Trust Assets, vote the pledged stock of Burns and Roe Group, Inc., subject to any restrictions set forth in the Restated Certificate of Burns and Roe Group, Inc., and subject to any conditions in the Promissory Note and the Pledge and Security Agreement;

(ii)    invest the monies held from time to time by the Trust;

(iii)    sell, transfer, or exchange any or all of the Trust Assets at such prices and upon such terms as the Trustees may consider proper, consistent with the other terms of this Trust Agreement, and subject to any conditions in the Promissory Note and the Pledge and Security Agreement;

(iv)    enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Trust to operate;

(v)    pay liabilities and expenses of the Trust, including, but not limited to, Trust expenses;

(vi)    establish such funds, reserves and accounts within the Trust estate, as deemed by the Trustees to be useful in carrying out the purposes of the Trust;

(vii)    sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

(viii)    establish, supervise and administer the Trust in accordance with the TDP and the terms thereof;

(ix)    appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing and forecasting, and other consultants and agents as the business of the Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustees permit and as the Trustees, in their discretion, deem advisable or necessary in order to carry out the terms and purposes of this Trust;

(x)    pay employees, legal, financial, accounting, investment, auditing, and forecasting, and other consultants, advisors, professionals and agents, including those engaged by the Trust in connection with its alternative dispute resolution activities, reasonable compensation and expenses incurred by such persons in connection with the performance of their duties;

(xi)    compensate the Trustees, the TAC members, and the Legal Representative as provided below (including their employees, legal, financial, accounting, investment and other advisors, professionals, consultants, independent contractors, and agents), and reimburse them for

#978816 v1                                    5

all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder;

(xii)   execute and deliver such instruments as the Trustees consider proper in administering the Trust;

(xiii)   enter into such other arrangements with third parties as are deemed by the Trustees to be useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement;

(xiv)   in accordance with Section 4.6 below, defend, indemnify and hold harmless (and purchase insurance indemnifying): (A) the Trustees and (B) the TAC, the Legal Representative, the officers and employees of the Trust, and any agents, advisors, professionals and consultants of the Trust, the TAC or the Legal Representative (the "*Additional Indemnitees*"), to the fullest extent that a business corporation or trust organized under the laws of the Trust's situs is from time to time entitled to indemnify and/or insure its directors, trustees, officers, employees, agents, advisors and representatives;

(xv)   delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Section 4.4 below;

(xvi)   consult with the Reorganized Debtors, the TAC and the Legal Representative at such times and with respect to such matters relating to the conduct of the Trust as are required under this Trust Agreement or with respect to such other matters relating to the conduct of the Trust that the Trustees consider desirable; and

(xvii)   make, pursue (by litigation or otherwise), collect, compromise or settle, in the name of the Trust or in the name of the Reorganized Debtors, any claim, right, action, demand, entitlement or cause of action included in the Trust Assets including, but not limited to, insurance recoveries, before any court of competent jurisdiction including, but not limited to, the Bankruptcy Court; provided that settlement of any actions or proceedings before the Bankruptcy Court shall require prior notice to the Reorganized Debtors.

(d)   The Trustees shall not have the power to guarantee (in their capacity as Trustees), or to cause the Trust to guarantee, any debt of other persons or entities.

(e)   The Trustees shall give the TAC, the Legal Representative and the Reorganized Debtors prompt notice of any act performed or taken pursuant to Sections 2.1(c)(i), (iii), (vii), or (xv) above, and any act proposed to be performed or taken pursuant to Section 2.2(f) below.

**2.2   General Administration**.

(a)     The Trustees shall adopt by-laws (*"Trust Bylaws"*), and act in accordance with the Trust Bylaws.  To the extent not inconsistent with the terms of this Trust Agreement, the Trust Bylaws shall govern the affairs of the Trust.  In the event of an inconsistency between the Trust Bylaws and this Trust Agreement, the Trust Agreement shall govern.

(b)     The Trustees shall (i) timely file such income tax and other returns and statements and shall timely pay all taxes required to be paid by the Trust under applicable statutes or regulations, (ii) comply with all withholding obligations, as required under the applicable provisions of the IRC and of any state law and the regulations promulgated thereunder, (iii) meet without limitation all requirements necessary to qualify and maintain qualification of the Trust as a qualified settlement fund within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

(c)     The Trustees shall timely account as follows:

(i)     Until the closing of the Debtors' bankruptcy case, the Trustees shall cause to be prepared and filed with the Bankruptcy Court and with the Office of the United States Trustee for the District of New Jersey, when due, any required post-confirmation reports of the Trust.

(ii)     The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year of the Trust, an annual report containing financial statements of the Trust (including, without limitation, a balance sheet of the Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles.  The Trustees shall provide a copy of such report to the TAC, the Legal Representative, and the Reorganized Debtors when such reports are filed with the Bankruptcy Court.

(iii)     Simultaneously with delivery of each set of financial statements referred to in Article 2.2(c)(ii) above, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements.  The Trustees shall provide a copy of such report to the TAC, the Legal Representatives, and the Reorganized Debtors when such report is filed.

(iv)     All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Clerk of the Bankruptcy Court.

(d)     The Trustees shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year and the succeeding four fiscal years. The Trustees shall provide a copy of the budget and cash flow projections to the TAC and the Legal Representative.

(e)     The Trustees shall consult with the TAC and the Legal Representative on (i) the general implementation and administration of the Trust; (ii) the general implementation and administration of the TDP; and (iii) such other matters as may be required under this Trust Agreement and the TDP.

(f)     The Trustees shall be required to obtain the consent of the TAC and the Legal Representative pursuant to the Consent Process set forth in Section 5.7(b) and 6.6(b) below, in addition to any other instances elsewhere enumerated, in order:

(i)     to establish and implement additional detailed procedures for the allowance and payment of claims filed with the Trust, including but not limited to payment percentages, claims payment ratios for Trust Claims involving asbestos-related malignancies and non-malignancies, medical and exposure evidentiary requirements, and other provisions for the payment by the Trust of Trust Claims;

(ii)     to establish and/or change the Payment Percentages or other provisions for payment of Trust Claims set forth in the TDP or that may hereafter be implemented in accordance with the Plan, this Agreement and the TDP, in the event that the requirements for such a change as set forth in said provision have been met;

(iii)     to establish and/or change any disease levels, medical/exposure criteria and/or scheduled values that may hereafter be implemented in accordance with the Plan, this Agreement and the TDP;

(iv)     to establish and/or to change the claims materials to be provided holders of Trust Claims under the TDP;

(v)     to establish and/or change the requirements for any persons or entities asserting claims against the Trust to provide additional kinds of medical and/or exposure evidence pursuant to the TDP;

(vi)     to terminate the Trust pursuant to Section 7.2 below;

(vii)     to settle the liability of any insurer or Asbestos Insurance Entity (as defined in the Plan) under any insurance policy, Subject Asbestos Insurance Policies and/or Asbestos Insurance Policy Rights, or in any legal action or proceeding related thereto;

(viii)   to change the compensation of the Trustees, the members of the TAC, or the Legal Representative, other than to reflect cost-of-living increases or changes approved by the Bankruptcy Court as otherwise provided herein;

(ix)   to take reasonable structural or other actions to minimize any tax on Trust Assets or on the Trust;

(x)   to amend the Trust Bylaws in accordance with the terms thereof;

(xi)   to amend any provision of this Trust Agreement or the TDP in accordance with the terms thereof;

(xii)   to acquire an interest in or to merge any asbestos claims resolution organization formed by the Trust with another asbestos claims resolution organization that is not specifically created by this Trust Agreement or the TDP, or to contract with another asbestos claims resolution organization or other entity that is not specifically created by this Trust Agreement or the TDP, or permit any other party to join in any asbestos claims resolution organization that is formed by the Trust pursuant to the Trust Agreement or the TDP or to acquire an interest in a claims resolution facility; provided that such merger, contract, joinder or acquisition shall not (a) subject the Protected Parties or any successors in interest thereto, to any risk of having any Trust Claims or other claims alleged to arise from or to have been caused by exposure to or installation or use of asbestos asserted against it or them, or (b) otherwise jeopardize the validity or enforceability of the Permanent Channeling Injunction; and provided further that the terms of such merger will require the surviving organization to make decisions about the allowance and value of claims in accordance with the TDP which requires that such decisions be based on the provisions of the TDP.

(g)   The Trustees shall meet with the TAC and the Legal Representative no less often than quarterly. The Trustees shall meet in the interim with the TAC and the Legal Representative when so requested by either.

(h)   The Trustees, upon notice from either the TAC or the Legal Representative, if practicable in view of pending business, shall at their next meeting with the TAC or the Legal Representative consider issues submitted by the TAC or the Legal Representative.

(i)   Periodically, but not less often than once a year, the Trustees shall make available to claimants and other interested parties the number of claims (if any) by disease levels that have been resolved both by the Trust by individual review and by arbitration, as well as by trial, indicating the amounts of the awards and the averages of the awards by jurisdiction pursuant to the TDP.

**2.3**    **Claims Administration.**

The Trustees shall promptly proceed to implement the TDP.

## SECTION 3

### ACCOUNTS, INVESTMENTS, AND PAYMENTS

**3.1    Accounts.** The Trustees may, from time to time, create such accounts and reserves within the Trust estate as they may deem necessary, prudent, or useful in order to provide for the payment of expenses and payment of Trust Claims, and may, with respect to any such account or reserve, restrict the use of monies therein.

**3.2    Investments.** Investment of monies held in the Trust shall be administered in the manner in which individuals of ordinary prudence, discretion, and judgment would act in the management of their own affairs, subject to the following limitations and provisions:

(a)    The Trust shall not acquire, directly or indirectly, equity in any entity (other than Burns and Roe Group, Inc., the Reorganized Debtors, or any successor to Burns and Roe Group, Inc. or the Reorganized Debtors) or business enterprise if, immediately following such acquisition, the Trust would hold more than 5% of the equity in such entity or business enterprise. The Trust shall not hold, directly or indirectly, more than 10% of the equity in any entity (other than Burns and Roe Group, Inc. or the Reorganized Debtors or any successor to Burns and Roe Group or the Reorganized Debtors) or business enterprise.

(b)    The Trust shall not acquire or hold any long-term debt securities unless (i) such securities are Trust Assets under the Plan, (ii) such securities are rated "Baa" or higher by Moody's, "BBB" or higher by Standard & Poor's ("*S&P's*"), or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency, or (iii) have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(c)    The Trust shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-1" or higher by Moody's or "A-1" or higher by S&P's or has been given an equivalent rating by another nationally recognized statistical rating agency.

(d)    Excluding any securities of Burns and Roe Group, Inc., the Debtors or the Reorganized Debtors, the Trust shall not acquire or hold any common or preferred stock or convertible securities unless such stock or securities are rated "A" or higher by Moody's or "A" or higher by S&P's or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency.

(e)    The Trust shall not acquire any debt securities or other instruments issued by any entity (other than debt securities or other instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof) if,

following such acquisition, the aggregate market value of all debt securities and instruments issued by such entity held by the Trust would exceed 2% of the aggregate value of the Trust estate.  The Trust shall not hold any debt securities or other instruments issued by any entity (other than debt securities or other instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof and other than debt securities or other instruments of Burns and Roe Group, Inc., the Reorganized Debtors or any successors thereto the extent that the aggregate market value of all securities and instruments issued by such entity held by the Trust would exceed 5% of the aggregate value of the Trust Assets.

(f)     The Trust shall not acquire or hold any certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Section 3.2(b) above.

(g)     The Trust may acquire and hold any securities or instruments issued by the Reorganized Debtors  or any successor to the Reorganized Debtors, or obtained as proceeds of litigation or otherwise to resolve disputes, without regard to the limitations set forth in Subsections (a)-(f) above.

(h)     The Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Trustees, they are adequately collateralized.

(i)     The Trust shall not acquire or hold any options.

**3.3     Source of Payments.**  All Trust expenses and payments and all liabilities with respect to claims shall be payable solely by the Trustees out of the Trust Assets.  Neither the Settlors, the Reorganized Debtors, their subsidiaries, any successor in interest, the present or former directors, officers, employees or agents of the Settlors or the Reorganized Debtors, nor the Trustees, the TAC or the Legal Representative, or any of their officers, agents, advisors, professionals or employees shall be liable in any respect or in any capacity for the payment of any Trust expense or any other liability of the Trust.

## SECTION 4

## TRUSTEES

**4.1     Number.**  There shall be three (3) Trustees.  The initial Trustees shall be those persons named on the signature page hereof.

**4.2     Term of Service**.

(a)     The initial Trustees named pursuant to Article 4.1 above shall serve staggered terms of three (3), four (4) and five (5) years each, as determined by the Trustees in consultation

with the TAC and the Legal Representative. At the conclusion of each initial staggered term, each Trustee's term of service shall be five (5) years. The initial Trustees shall serve from the Effective Date until the earlier of (i) the end of his or her term, (ii) his or her death, (iii) his or her resignation pursuant to Section 4.2(b) below, (iv) his or her removal pursuant to Section 4.2(c) below, or (v) the termination of the Trust pursuant to Section 7.2 below.

(b)     A Trustee may resign at any time by written notice to the remaining Trustees, the TAC and the Legal Representative. Such notice shall specify a date when such resignation shall take place, which shall not be less than 90 days after the date such notice is given, where practicable.

(c)     A Trustee may be removed by unanimous vote of the remaining Trustees in the event that he or she becomes unable to discharge his or her duties hereunder due to accident or physical or mental deterioration, or for other good cause. Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of Section 2.2 above, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustees hereunder, or repeated non-attendance at scheduled meetings. Such removal shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

### 4.3     Appointment of Successor Trustees.

(a)     In the event of a vacancy in the position of Trustee, whether by term expiration, resignation or removal, the remaining Trustees shall consult with the TAC and the Legal Representative concerning appointment of a successor Trustee. The vacancy shall be filled by the unanimous vote of the remaining Trustees unless a majority of the TAC or the Legal Representative vetoes the appointment. In the event that the remaining Trustees cannot agree on a successor Trustee, or a majority of the TAC or the Legal Representative vetoes the appointment of a successor Trustee, the Bankruptcy Court shall make the appointment. Nothing shall prevent the reappointment of a Trustee for an additional term or terms.

(b)     Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustees.

(c)     Each successor Trustee shall serve until the earlier of (i) the end of a full term of five (5) years if the predecessor Trustee completed his or her term, (ii) the end of the remainder of the term of the Trustee whom he or she is replacing if said predecessor Trustee did not complete said term, (iii) his or her death, (iv) his or her resignation pursuant to Section 4.2(b) above, (v) his or her removal pursuant to Section 4.2(c) above, or (vi) the termination of the Trust pursuant to Section 7.2 below.

#978816 v1                                        12

**4.4**   **Liability of Trustees, Officers and Employees.** The Trustees and the individuals identified as Additional Indemnitees in Section 2.1(c)(xiv) above shall not be liable to the Trust, to any person or entity holding an Asbestos Related Personal Injury Claim or an Indirect Asbestos Related Personal Injury Claim, or to any other person or entity, except for such person's own breach of trust committed in bad faith or willful misappropriation. In addition, the Trustees and the Additional Indemnitees shall not be liable for any act or omission of any other Trustee or Additional Indemnitee unless such person acted with bad faith in the selection or retention of such other Trustee or Additional Indemnitee.

**4.5**   **Compensation and Expenses of Trustees.**

(a)   Each of the Trustees shall receive compensation from the Trust for his/her services as a Trustee in the amount of $_____ per annum, payable in installments no less frequent than quarterly, plus a per diem allowance for meetings or other Trust business performed in the amount of $_____. For purposes of the per diem allowance, Trust business includes, but is not limited to, attendance at meetings of the Reorganized Debtors' Board of Directors. For purposes of section 7.4 below, the Trustees shall determine the scope and duration of activities that constitute a meeting and, if the Trustees elect to provide for payment for activities of less than a full day's duration, may provide for partial payment of per diem amounts on a proportional basis for activities of less than a full day's duration. The per annum and per diem compensation payable to the Trustees hereunder shall be reviewed every three (3) years and appropriately adjusted for changes in the cost of living. Any other changes in compensation of the Trustees shall be made subject to the approval of the Bankruptcy Court.

(b)   The Trust will promptly reimburse the Trustees for all reasonable out-of-pocket costs and expenses incurred by the Trustees in connection with the performance of their duties hereunder.

(c)   The Trust shall include a description of the amounts paid under this Section 4.5 in the accounts to be filed with the Bankruptcy Court and provided to the TAC, the Legal Representative, and the Reorganized Debtors pursuant to Section 2.2(c)(i).

**4.6**   **Indemnification of Trustees and Additional Indemnitees.**

(a)   The Trust shall indemnify and defend the Trustees, as well as the Additional Indemnitees, in the performance of their duties hereunder to the fullest extent that a business corporation or trust organized under the laws of the Trust's situs is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties. Notwithstanding the foregoing, the Trustees and the Additional Indemnitees shall not be indemnified or defended in any way for any liability, expense, claim, damage, or loss for which he or she is ultimately liable under Section 4.4 above.

(b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of a Trustee or Additional Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative or arbitrative from which they are indemnified by the Trust pursuant to Section 4.6(a) above, shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trustees or Additional Indemnitee, to repay such amount in the event that it shall be determined ultimately by final order that such Trustee or Additional Indemnitee is not entitled to be indemnified by the Trust.

(c)     The Trustees may purchase and maintain reasonable amounts and types of insurance on behalf of an individual who is or was a Trustee or Additional Indemnitee including against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, TAC member, or Legal Representative, or as an officer, employee, agent or other representative of any of them.

**4.7     Trustees' and Additional Indemnitees' Lien.** The Trustees and the Additional Indemnitees shall have a first priority lien upon the Trust Assets to secure the payment of any amounts payable to them pursuant to Section 4.6 above.

**4.8     Trustees' Employment of Experts.** The Trustees may, but shall not be required to, retain and/or consult with counsel, accountants, appraisers, auditors and forecasters, and other parties deemed by the Trustees to be qualified as experts on the matters submitted to them, and the written opinion of or information provided by any such parties on any matters submitted to them by the Trustees shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustees hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

**4.9     Trustees' Independence.** The Trustees shall not, during the term of their service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for the Reorganized Debtors or BRSC.. Notwithstanding the foregoing, any Trustee may serve, without any additional compensation other than the per diem compensation to be paid by the Trust pursuant to Section 4.5(a) above, as a director of the Reorganized Debtors. No Trustee shall act as an attorney for any person or entity who holds an asbestos related claim against any other person or entity.

**4.10     Bond.** The Trustees shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court. The cost of any such bond shall be an expense of the Trust.

## SECTION 5

## TRUST ADVISORY COMMITTEE

**5.1**    **Members.**  The TAC shall consist of two (2) members, who shall initially be the persons named on the signature page hereof.  The two members shall have the authority (but not the obligation) to name a third member.

**5.2**    **Duties**.  The members of the TAC shall serve in a fiduciary capacity representing all holders of existing Asbestos Related Personal Injury Claims.  The Trustees must consult with the TAC on matters identified in Section 2.2(e) above and in other provisions herein, and must obtain the consent of the TAC on matters identified in Section 2.2(f) above.  Where provided in the TDP, certain other actions by the Trustees are also subject to the consent of the TAC.

**5.3**    **Term of Office**.

(a)    Each member of the TAC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b) below, (iii) his or her removal pursuant to Section 5.3(c) below, or (iv) the termination of the Trust pursuant to Section 7.2 below.

(b)    A member of the TAC may resign at any time by written notice to the other members of the TAC, the Trustees and the Legal Representative.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Such removal shall be made at the recommendation of the remaining members of the TAC with the approval of the Bankruptcy Court.

**5.4**    **Appointment of Successor.**

(a)    In the event of a vacancy caused by the resignation or death of a TAC member, his or her successor shall be selected by the TAC member who is resigning or deceased, or by his or her law firm in the event that such member has not pre-selected a successor.  If neither the member nor the law firm exercises the right to make such a selection, the successor shall be chosen by a majority vote of the remaining TAC members.  If a majority of the remaining members cannot agree, the Bankruptcy Court shall appoint the successor  In the event of a vacancy caused by the removal of a TAC member, the remaining members of the TAC by majority vote shall name the successor.  If the majority of the remaining members of the TAC cannot reach agreement, the Bankruptcy Court shall appoint the successor.

(b)    Each successor TAC member shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b) above, (iii) his or her removal pursuant to Section 5.3(c) above, or (iv) the termination of the Trust pursuant to Section 7.2 below.

#978816 v1                                        15

### 5.5   TAC's Employment of Professionals.

(a)     The TAC may but is not required to retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties deemed by the TAC to be qualified as experts on matters submitted to the TAC (the "*Professionals*"). The TAC and its Professionals shall at all times have complete access to the Trust's officers, employees and agents, as well as to the Professionals retained by the Trust, and shall also have complete access to all information generated by them or otherwise available to the Trust or the Trustees; provided, however, that the TAC and its Professionals shall not have access to any information or documents subject to the attorney-client privilege or work product doctrine generated in connection with the defense, settlement or litigation of any individual Trust Claim. In the absence of gross negligence, the written opinion of or information provided by any Professional deemed by the TAC to be qualified as an expert on the particular matter submitted to the TAC shall be full and complete authorization and protection in support of any action taken or not taken by the TAC in good faith and in accordance with the written opinion of or information provided by the Professional.

(b)     The Trust shall promptly reimburse the TAC for all reasonable fees and costs associated with the TAC's employment of legal counsel pursuant to this provision (or pay such fees and costs directly to such Professionals, if so instructed) in connection with the TAC's performance of its duties hereunder. The Trust shall also promptly reimburse, or pay directly if so instructed, the TAC for all reasonable fees and costs associated with the TAC's employment of any other Professional pursuant to this provision in connection with the TAC's performance of its duties hereunder; provided, however, that (i) the TAC has first submitted to the Trust a written request for such reimbursement setting forth the reasons (A) why the TAC desires to employ such Professional, and (B) why the TAC cannot rely on Professionals retained by the Trust to meet the need of the TAC for such expertise or advice, and (ii) the Trust has approved the TAC's request for reimbursement in writing. If the Trust agrees to pay for the TAC Professional, such reimbursement shall be treated as a Trust expense. If the Trust declines to pay for the TAC Professional, it must set forth its reasons in writing. If the TAC still desires to employ such Professional at Trust expense, the TAC and/or the Trustees shall resolve their dispute pursuant to Section 7.13 below. Such reimbursements or direct payments shall be deemed a Trust expense.

### 5.6   Compensation and Expenses of TAC.   Each of the members of the TAC shall receive compensation from the Trust for his or her services as a TAC member in the form of a reasonable hourly rate set by the Trustees for attendance at meetings or other conduct of Trust business. The members of the TAC shall also be reimbursed for all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder. Such reimbursements or direct payments shall be deemed a Trust expense. Payments for fees and expenses under this paragraph shall be due and payable monthly, against invoices to be presented by each TAC member. The Trust shall include a description of the amounts paid under this Section 5.6 in the accounts to be filed with the Bankruptcy Court and provided to the Trustees, the Legal Representative, and the Reorganized Debtors pursuant to Section 2.2(c)(i).

**5.7    Procedures for Consultation With and Obtaining the Consent of the TAC.**

(a)    Consultation Process.

(i)    In the event the Trustees are required to consult with the TAC pursuant to Section 2.2(e) above or on other matters as provided herein, the Trustees shall provide the TAC with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustees shall also provide the TAC with such reasonable access to Professionals and other experts retained by the Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustees are considering such matter, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustees.

(ii)    The Trustees shall take into consideration the time required for the TAC, if its members so wish, to engage and consult with its own independent financial or investment advisors as to such matter.

(b)    Consent Process.

(i)    In the event the Trustees are required to obtain the consent of the TAC pursuant to Section 2.2(f) above, the Trustees shall provide the TAC with a written notice stating that their consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustees propose to take, and explaining in detail the reasons why the Trustees desire to take such action. The Trustees shall provide the TAC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustees shall also provide the TAC with such reasonable access to Professionals and other experts retained by the Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustees are considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustees.

(ii)    The TAC must consider in good faith and in a timely fashion any request for its consent by the Trustees, and must in any event advise the Trustees in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustees. The TAC may not withhold its consent unreasonably. If the TAC decides to withhold its consent, it must explain in detail its objections to the proposed action. If the TAC does not advise the Trustees in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request, the TAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 5.7(b), the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustees and/or the TAC shall resolve their dispute pursuant to Section 7.13. However, the burden

of proof with respect to the validity of the TAC's objection and withholding of its consent shall be on the TAC.

## SECTION 6

## THE LEGAL REPRESENTATIVE

**6.1    Duties.** The initial Legal Representative shall be Anthony R. Calascibetta. He shall serve in a fiduciary capacity, representing the interests of the holders of Demands (as defined in the Plan) for the purpose of protecting the rights of such persons. The Trustees must consult with the Legal Representative on matters identified in Section 2.2(e) above and on certain other matters provided herein, and must obtain the consent of the Legal Representative on matters identified in Section 2.2(f) above.  Where provided in the TDP, certain other actions by the Trustees are also subject to the consent of the Legal Representative.

**6.2    Term of Office.**

(a)    The Legal Representative shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 6.2(b) below, (iii) his or her removal pursuant to Section 6.2(c) below, or (iv) the termination of the Trust pursuant to Section 7.2 below.

(b)    The Legal Representative may resign at any time by written notice to the Trustees. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    The Legal Representative may be removed by the Bankruptcy Court in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.

**6.3    Appointment of Successor.** A vacancy caused by resignation shall be filled with an individual nominated prior to the effective date of the resignation by the resigning Legal Representative, and a vacancy caused by death or removal of the Legal Representative shall be filled with an individual nominated by the Trustees, the TAC or both. In any case, the nominee shall be subject to the approval of the Bankruptcy Court.

**6.4    Legal Representative's Employment of Professionals.**

(a)    The Legal Representative may but is not required to retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties deemed by the Legal Representative to be qualified as experts on matters submitted to the Legal Representative (the "***Professionals***"). The Legal Representative and his or her experts shall at all times have complete access to the Trust's officers, employees and agents,

as well as to the Professionals retained by the Trust, and shall also have complete access to all information generated by them or otherwise available to the Trust or the Trustees; provided, however, that the Legal Representative and his or her Professionals shall not have access to any information or documents subject to the attorney-client privilege or work product doctrine generated in connection with the defense, settlement or litigation of any individual Trust Claim. In the absence of gross negligence, the written opinion of or information provided by any Professional deemed by the Legal Representative to be qualified as an expert on the particular matter submitted to the Legal Representative shall be full and complete authorization and protection in support of any action taken or not taken by the Legal Representative in good faith and in accordance with the written opinion of or information provided by the Professional.

(b)      The Trust shall promptly reimburse the Legal Representative for all reasonable fees and costs associated with the Legal Representative's employment of legal counsel or any other Professional whose employment is approved in this Agreement (or pay such fees and costs directly to such Professionals, if so instructed by the Legal Representative) in connection with the Legal Representative's performance of his or her duties hereunder.

(c)      The Trust shall promptly reimburse the Legal Representative for all reasonable fees and costs associated with the Legal Representative's employment of any other Professionals pursuant to this provision (or pay such fees and costs directly to such Professionals, if so instructed by the Legal Representative), in connection with the Legal Representative's performance of his or her duties hereunder; provided, however, that (i) the Legal Representative has first submitted to the Trust a written request for such reimbursement setting forth the reasons (A) why the Legal Representative desires to employ the Professional, and (B) why the Legal Representative cannot rely on Professionals retained by the Trust to meet the need of the Legal Representative for such expertise or advice, and (ii) the Trust has approved the Legal Representative's request for reimbursement in writing. If the Trust agrees to pay for the Legal Representative's Professional, such reimbursement shall be treated as a Trust Expense. If the Trust declines to pay for the Legal Representative's Professional, it must set forth its reasons in writing. If the Legal Representative still desires to employ the Professional at Trust expense, the Legal Representative and/or the Trustees shall resolve their dispute pursuant to Section 7.13 below.

(d)      The employment of the following Professionals by and on behalf of the Legal Representative is hereby acknowledged and approved: Pryor Cashman Sherman & Flynn LLP, as attorneys for the Legal Representative, and Analysis Research Planning Corp., also known as "ARPC", as consultant to the Legal Representative. The fees and expenses of these Professionals shall be paid in accordance with Section 6.4(b) above, and shall be deemed a Trust expense.

**6.5      Compensation and Expenses of the Legal Representative.** The Legal Representative shall receive compensation from the Trust in the form of the Legal Representative's normal hourly rate for services performed. The Trust will promptly reimburse the Legal Representative for all reasonable out-of-pocket costs and expenses incurred by the

Legal Representative in connection with the performance of his or her duties hereunder. Such reimbursements or direct payments shall be deemed a Trust expense. Payments for fees and expenses under this paragraph shall be due and payable monthly, against invoices to be presented by Legal Representative. The Trust shall include a description of the amounts paid under this Section 6.5 in the accounts to be filed with the Bankruptcy Court and provided to the Trustees, the Legal Representative, and the Reorganized Debtors pursuant to Section 2.2(c)(i).

6.6    **Procedures for Consultation With and Obtaining the Consent of the Future Claimants Representative.**

(a)    Consultation Process.

(i)    In the event the Trustees are required to consult with the Legal Representative pursuant to Section 2.2(e) above or on any other matters specified herein, the Trustees shall provide the Legal Representative with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustees shall also provide the Legal Representative with such reasonable access to Professionals and other experts retained by the Trust and its staff (if any) as the Legal Representative may reasonably request during the time that the Trustees are considering such matter, and shall also provide the Legal Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustees.

(ii)    The Trustees shall take into consideration the time required for the Legal Representative, if he or she so wishes, to engage and consult with his or her own independent financial or investment advisors as to such matter.

(b)    Consent Process.

(i)    In the event the Trustees are required to obtain the consent of the Legal Representative pursuant to Section 2.2(f) above, the Trustees shall provide the Legal Representative with a written notice stating that his or her consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustees propose to take, and explaining in detail the reasons why the Trustees desire to take such action. The Trustees shall provide the Legal Representative as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustees shall also provide the Legal Representative with such reasonable access to Professional and other experts retained by the Trust and its staff (if any) as the Legal Representative may reasonably request during the time that the Trustees are considering such action, and shall also provide the Legal Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustees.

(ii)    The Legal Representative must consider in good faith and in a timely fashion any request for his or her consent by the Trustees, and must in any event advise the Trustees in writing of his or her consent or objection to the proposed action within thirty (30) days

of receiving the original request for consent from the Trustees. The Legal Representative may not withhold his or her consent unreasonably. If the Legal Representative decides to withhold consent, he or she must explain in detail his or her objections to the proposed action. If the Legal Representative does not advise the Trustees in writing of his or her consent or objections to the proposed action within thirty (30) days of receiving the notice from the Trustees regarding such consent, the Legal Representative's consent shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 5.7(b), the Legal Representative continues to object to the proposed action and to withhold its consent to the proposed action, the Trustees and/or the Legal Representative shall resolve their dispute pursuant to Section 7.13. However, the burden of proof with respect to the validity of the Legal Representative's objection and withholding of his or her consent shall be on the Legal Representative.

## SECTION 7

## GENERAL PROVISIONS

**7.1    Irrevocability.**

The Trust is irrevocable.

**7.2    Termination.**

(a)    The Trust shall automatically terminate on the date ninety (90) days after the first to occur of the following events:

(i)    the Trustees decide to terminate the Trust because (A) they deem it unlikely that new asbestos related claims will be filed against the Trust, (B) all Trust Claims duly filed with the Trust have been liquidated and paid to the extent provided in this Trust Agreement and the TDP or disallowed by a final, non-appealable order or judgment, to the extent possible based upon the funds and Trust Assets available through the Plan, and (C) twelve (12) consecutive months have elapsed during which no new Asbestos Related Personal Injury Claim has been filed with the Trust; or

(ii)    if the Trustees have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Trust in a manner consistent with this Trust Agreement and the TDP, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a Final Order; or

(iii)    to the extent that any rule against perpetuities shall be deemed applicable to the Trust, twenty-one (21) years less ninety-one (91) days pass after the death of the last survivor

of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof.

(b)     On the Termination Date, after payment of all the Trust's liabilities have been provided for, all monies remaining in the Trust estate shall be given to such organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, which tax-exempt organization(s) shall be selected by the Trustees using their reasonable discretion; after consultation with the TAC and the Legal Representative; provided, however, that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from asbestos related lung disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Reorganized Debtors within the meaning of section 468B(d)(3) of the Internal Revenue Code. Notwithstanding any contrary provision of the Plan and related documents, this Section 7.2(b) cannot be modified or amended.

**7.3     Amendments.**  The Trustees, after consultation with the TAC and the Legal Representative, and subject to the unanimous consent of the TAC and the Legal Representative, may modify or amend this Trust Agreement and the Trust By-laws.  The Trustees, after consultation with the TAC and the Legal Representative, and subject to the consent of the TAC and the Legal Representative, may modify or amend the TDP; provided, however, that no amendment to the TDP shall be inconsistent with any limitations on implementation of additional or amendment set forth in the TDP or this Agreement.  Any modification or amendment made pursuant to this Article must be done in writing.  Notwithstanding anything contained in this Trust Agreement to the contrary, neither this Trust Agreement, the Trust Bylaws, the TDP, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify the applicability of section 524(g) of the Bankruptcy Code, the efficacy or enforceability of the injunction entered thereunder, or the Trust's qualified settlement fund status under Section 468B of the Internal Revenue Code.

**7.4     Meetings.**  The Trustees, the TAC, and the Legal Representative, shall be deemed to have attended a meeting in the event such person spends a substantial portion of the day conferring, in person or by telephone conference call, on Trust matters with the TAC, the Legal Representative, or Trustees, as applicable.  A Trustee shall also be deemed to have attended a meeting in the event he or she spends a substantial portion of the day engaging in activities related to the Reorganized Debtors, including attendance at its Board of Directors meetings.   The Trustees, the TAC and the Legal Representative shall have complete discretion to determine whether a meeting, as described herein, occurred for purposes of Sections 4.5, 5.6, and 6.5 above.

**7.5     Notices.**  Notices to persons asserting claims shall be given by first class mail, postage prepaid, at the address of such person, or, where applicable, such person's legal representative, in each case as provided on such person's claim form submitted to the Trust with respect to his or her Trust Claim.

     (a)    Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by telex, telecopy or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

     To the Trust through the Trustees:

     To the TAC:

     Lisa Busch, Esq.
     Weitz & Luxemberg, P.C.
     180 Maiden Lane
     New York, New York 10603

     Deirdre Pacheco, Esq.
     Wilentz Goldman & Spitzer
     90 Woodbridge Center Drive
     Woodbridge, New Jersey 07095

     To the Legal Representative:

     Anthony R. Calascibetta, as Legal Representative
      of Future Asbestos Personal Injury Claimants
     c/o Wiss & Company
     354 Eisenhower Parkway
     Livingston, New Jersey 07039

     with a copy to

     Pryor Cashman Sherman & Flynn LLP
     Attn:  Richard Levy, Jr., Esq.
     410 Park Avenue
     New York, New York 10022

     To the Reorganized Debtors and BRSCs:

     Charles A. Doyle, Esq.

#978816 v1          23

Burns and Roe Enterprises, Inc.
800 Kinderkamack Road
Oradell, New Jersey 07649

with a copy to

Jack M. Zackin, Esq.
Sills Cummis Epstein & Gross, PC
One Riverfront Plaza
Newark, New Jersey 07102

(b)    All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

**7.6    Successors and Assigns**.  The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Settlors, the Trust, the Trustees, the Legal Representative, the Reorganized Debtors, and their respective successors, heirs, administrators, trustees and assigns, except that neither the Settlors, the Trust, the Trustees nor the Reorganized Debtors may assign or otherwise transfer any of its, or their, rights or obligations under this Trust Agreement except, in the case of the Trust and the Trustees, as contemplated by Section 2.1 above.

**7.7    Limitation on Claim Interests for Securities Laws Purposes**.  Asbestos Related Personal Injury Claims, and any interests therein (a) shall not be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest; provided, however, that clause (a) of this Section 7.8 shall not apply to the holder of a claim that is subrogated to a Trust Claim as a result of its satisfaction of such Trust Claim.

**7.8    Entire Agreement; No Waiver**.  The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

#978816 v1                                        24

**7.9    Headings.**    The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

**7.10    Governing Law.**    This Trust Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New Jersey, without regard to its conflict of law principles.

**7.11    Settlor Representative and Cooperation.**    BREI, BRCGI and BRSC are hereby irrevocably designated as the Settlors, and they are hereby authorized to take any action required of the Settlors in connection with the Trust Agreement.    The Settlors agree to cooperate in implementing the goals and objectives of the Trust.

**7.12    Dispute Resolution.**    Any disputes that arise under this Trust Agreement or under the TDP shall be resolved by submission of the matter to an alternative dispute resolution process in _____ ("*ADR*") mutually agreeable to the parties involved.    Should any party to the ADR process be dissatisfied with the decision of the mediator(s) or arbitrator(s), that party may apply to the Bankruptcy Court for a judicial determination of the matter.    In either case, if the dispute arose pursuant to the consent provision set forth in Section 5.7(b) (in the case of the TAC) or Section 6.6(b) (in the case of the Legal Representative), the burden of proof shall be on the party or parties who withheld consent to show by a preponderance of the evidence that the objection was valid.    Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court.    Notwithstanding anything else herein contained, to the extent any provision of this Trust Agreement is inconsistent with any provision of the Plan or the TDP, the Plan shall control.

**7.13    Enforcement and Administration.**    The provisions of this Trust Agreement and the TDP attached hereto shall be enforced by the Bankruptcy Court pursuant to the Plan.    The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Trustees and over any disputes hereunder not resolved by alternative dispute resolution in accordance with Section 7.13 above.

**7.14    Effectiveness.**    This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

**7.15    Counterpart Signatures.**    This Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Trust Agreement this _____ day of _____, 2005.

#978816 v1                                                    25

**BURNS AND ROE ENTERPRISES, INC., SETTLOR**

By:_____
　　　　K. Keith Roe, Chief Executive Officer


**BURNS AND ROE CONSTRUCTION GROUP, SETTLOR**

By:_____
　　　　K. Keith Roe, Chief Executive Officer

BURNS AND ROE SERVICES CORPORATION,
SETTLOR

By:_____
　　　　　K. Keith Roe, Chief Executive Officer:

TRUSTEES:

_____

_____

_____

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS:

By:_____

TRUST ADVISORY COMMITTEE

_____
Lisa Busch, Esq.

_____
Deirdre Pacheco, Esq.

LEGAL REPRESENTATIVE OF FUTURE
ASBESTOS PERSONAL INJURY CLAIMANTS

_____
Anthony R. Calascibetta

#978816 v1

27